# HARRY D. DAGUE *vs.* GRAND LODGE BROTHER-HOOD OF RAILROAD TRAINMEN.

*Benefit Societies—Non-Payment of Dues Owing to Fault of
Officer of Society—Irregularity in Expulsion of Member
Held Not to Have Been Waived—Provision as to Ap-
peal Within the Order When Claim Rejected.*

The Constitution of a benefit society provided that the dues of
members should be paid monthly in advance to the financier,
and that any member failing so to pay should become *ipso
facto expelled* and his benefit certificate void. Plaintiff sent
his dues for January to the financier of his lodge by regis-
tered letter, which was taken to that officer's home on Decem-

ber 29th. He was absent and there was no office at which
dues could be paid. The letter containing the remittance
was not delivered to the financier until January 15th. It had
been customary for members who were absent from the town
to pay their dues by mail. The lodge refused to receive subse-
quent dues from the plaintiff, alleging that his membership
had been forfeited by his failure to pay the January dues.
*Held,* that since the non-payment of these dues in time was
owing to the fault of the lodge in not having some officer
accessible to whom they could be paid, the plaintiff's member-
ship was not thereby forfeited.

A man's membership in a benefit society was irregularly termi-
nated by his lodge. Afterwards he wrote letters to the society,
apparently acquiescing in his expulsion, and applied for re-
instatement, and asked for the return of certain dues paid by
him. *Held,* that since it is clear that he did not know what
his rights were or that his expulsion was invalid, his conduct
did not amount to a waiver of the irregularity in the proceed-
ings of the lodge.

The question whether a party has waived his legal rights or
not is for the jury, under instructions from the Court, when
it depends upon the existence or not of certain facts concern-
ing which parol evidence has been given.

The Constitution of a benefit society provided that every claim
for total disability should be referred to the beneficiary board
of the order, and, if rejected, that the claimant should appeal
to the Grand Lodge at its next session, and that no suit should
be brought until after appeal taken and the claim rejected,
and then within six months after the disability occurs. *Held,*
that the society is estopped to rely upon this provision when
it wholly disallowed a party's claim upon the ground that he
was not a member at the time the injury was suffered, and
refused to entertain his appeal to the beneficiary board.

*Decided June 29th, 1909.*

Appeal from the Circuit Court for Allegany County
(KEEDY, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Walter C. Capper,* for the appellant.

*Austin A. Wilson,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellee is a voluntary incorporated organization doing business in this State. It consists of a Grand Lodge with headquarters located at Cleveland, Ohio, and subordinate lodges holding Charters granted by the Grand Lodge. The object of the organization is to unite the railroad trainmen, and to promote their general welfare. It issues three classes of beneficiary certificates known as Class A, B, and C. The constitution provides that each class shall be evidenced by a beneficiary certificate to be issued under the hands of the Grand Master and Grand Secretary and Treasurer, and in the name and under the seal of the Grand Lodge. Each certificate shows the class in which it is issued, and provides for the payment, in accordance with the constitution of the Order, of the full amount of such class upon the death of the insured therein named, or upon his becoming totally and permanently disabled. A person who suffers the loss of a hand at or above the wrist, or the loss of a foot at or above the ankle joint, or the loss of the sight of both eyes, is totally and permanently disabled within the meaning of the certificate. When a member is thus disabled he is entitled, on sufficient and satisfactory proof thereof, to the full amount of his beneficiary certificate, but not otherwise. When a member suffers such disability, it is the duty of the Lodge of which he is a member to furnish proofs of the same to the Grand Lodge. In the event of the disability of a member while out of the jurisdiction of his lodge, it is the duty of the lodge within the jurisdiction in which the disability occurs to furnish these proofs to the Grand Lodge.

Every claim for total and permanent disability, after dis-
allowance, shall be referred to the Beneficiary Board of the
order, and if rejected by that Board, the claimant shall have
the right to appeal to the Grand Lodge at its next succeeding
session, but not afterwards. It is provided by the constitu-
tion that no suit or action at law, or in equity shall ever be
commenced upon any beneficiary certificate, until after such
appeal has been taken, within the time directed, and decided
by the Grand Lodge. Section 64 of the constitution declares
that all right of action upon beneficiary certificates shall be
absolutely barred, unless proofs of death or total and perma-
nent disability shall be forwarded to the Grand Secretary
and Treasurer, as hereinafter required, within six months
after such death or disability occurs; and it shall be likewise
barred unless such action shall be commenced in some Court
of competent jurisdiction within six months after the final
rejection of the claim by the Grand Lodge. Section 129 of
the constitution of subordinate lodges provides that the dues
of members of this lodge shall be paid monthly in advance,
before the first day of each month, to the financier, or col-
lector (when such office exists), and shall be conditioned
upon the class of certificate held in beneficiary department.
Section 141 declares that "if any member of this lodge fail-
ing or refusing to pay his dues and assessments, as required
by Section 129, becomes expelled, without any notice or fur-
ther action whatsoever, and at that instant his beneficiary
certificate shall be void, and all rights and benefits of bene-
ficiary membership shall cease and be determined."

The appellant in this case held a beneficiary certificate in
Class C of the defendant issued by the Grand Lodge on the
6th of May, 1900, through the agency of Subordinate Lodge
No. 115. He was transferred to the Cumberland Lodge No.
440 in 1903, and it is admitted that he paid his dues and as-
sessments promptly up to the 1st of January, 1907. He
suffered a total and permanent disability, the loss of a leg in
the railroad service, on the 21st of July, 1907. The con-
stitution provided that a member holding a certificate in

Class C should receive upon incurring such disability the sum of $1,350. The certificate was issued upon the express conditions "that the said Harry D. Dague shall comply with the constitution, by-laws, rules and regulations now in force or which may hereafter be adopted by the within named Brotherhood, which as printed and published by the Grand Lodge of the said Brotherhood, are made a part hereof, and that he pay all dues and assessments imposed upon him within the time specified by the constitution and by-laws and any failure to make such payment of either Grand or Subordinate Lodge dues, or any general or special assessment levied, shall at once forfeit any and all rights hereunder, and this certificate shall become null and void without notice to the assured, nor shall any payment by or for the assured, of either dues or assessments, after such forfeiture revive this certificate or confer any rights thereunder."

The defendant refused to pay the amount claimed to be due under the certificate upon the ground that the appellant was not a member of the organization when he was injured, and this suit was brought to recover the amount payable under the certificate. The trial of the case in the Circuit Court for Allegany County resulted in a verdict for the defendant under an instruction granted by the Court, at the close of the plaintiff's case, that under the pleadings there was no legally sufficient evidence to entitle him to recover, and from the judgment thereon entered this appeal was taken.

The defendant claims that the appellant was not a member of the organization, because he failed to pay his monthly dues for January, 1907, and that, under the constitution of the organization and the terms of the certificate, that failure operated to expel him from membership and to forfeit all his rights under the certificate. The Court below found that this contention of the appellee was not sustained by the evidence, and that the failure of Lodge No. 440 to receive the dues for January, 1907, and the ensuing months was not due to any default on the part of the plaintiff. The evidence is clear that his dues for January, 1907, and for

the intervening months preceding the accident were not paid to or received by the Cumberland Lodge, because of the default of the officers of that lodge. E. M. Pettie was the financier of that lodge, and it was his duty to receive the dues of members and to give receipts therefor. These dues were obliged to be paid monthly in advance before the first day of each month. It was the duty of Mr. Pettie to provide some place where the members could pay their dues to him in person or to some person authorized to receive them. The testimony shows that the dues of the plaintiff for January, 1907, were taken to the home of Mr. Pettie on the 29th of December, 1906, by J. B. Wahl, a mail carrier of the Cumberland Post Office. The house was locked, and that Mr. Pettie was away from home, and he had no office at which the money could be paid. The money was sent by the plaintiff in a registered letter from Glassport, Pennsylvania, and that it was the custom of members who were absent, as the plaintiff was, to send their dues by mail. A notice was left under the door at Mr. Pettie's home notifying him that the letter was at the post office. It was his custom to call at the office about the last of each month and receive registered letters and money orders, but in December, 1906, he did not do this, and allowed his mail to accumulate, and this letter was not delivered until about the 15th of January, 1907. The evidence also shows that on December 26th, 1906, the Cumberland Lodge, without notice to the plaintiff, transferred him to Glassport Lodge; but he never was accepted by that lodge, and under Section 155 of the constitution of Subordinate Lodges he retained his membership in the Cumberland Lodge, and it was his duty to pay his dues and assessments to it.

The plaintiff was at all times ready, able and willing to pay his monthly dues as they became payable subsequent to January 1st, 1907; but the Cumberland Lodge declared it could not receive them because his failure to pay the January dues had forfeited his membership in the order, and the McKeesport Lodge to which he had been transferred would

not receive them, because he had not been accepted by that lodge.

It is, we think, entirely clear that the situation in which the plaintiff was placed was due to the default and negligence of E. M. Pettie, the financier of the Cumberland Lodge, and that under the rule laid down in *Schlosser* v. *Grand Lodge,* 94 Md. 362, the defendant cannot avail itself of that negligence to evade the payment of the sum claimed to be due under the certificate.

· The appellee contends that, if it be conceded that the plaintiff was illegally suspended, he has waived the illegality of the expulsion, and therefore cannot recover. The Court below adopted this view and withdrew the case from the jury upon that ground alone, but stated that the case was a close one.

The propriety of this ruling involves an examination of the facts appearing in the record upon which it was based. There was no express waiver of any of his rights of membership, and it is evident that the plaintiff did not intend willingly to surrender any of his rights, but that he wished to retain the benefits to which he was entitled under his certificate. The Cumberland Lodge told him that a mistake had been made in suspending him, and he was told by Mr. Pettie that he thought the lodge would readmit him without cost, and shortly after that Mr. Little, the secretary, sent him a blank form of readmission which he filled out and returned to the Cumberland Lodge. He was notified on February 21, 1907, to be in Cumberland on the 27th of that month, but was not told for what purpose. He was then 143 miles from Cumberland at work, and he could not come. He heard nothing further from the Cumberland Lodge. He then tried to join the McKeesport Lodge, but was rejected because of some physical disqualifications. On April the 4th, 1907, he wrote the following letter to A. E. King, Grand Secretary and Treasurer of the defendant: "As I have been dropped out of the B. of R. T. and refused readmission again as a beneficiary member, I thought I would write and let you

know under what circumstances I was expelled on December 28th. I sent a registered letter to Bro. Pettie of 440 at Cumberland at No. 18 Davison street, with my dues $2.75, and I went to Philadelphia; did not get back until January 14th, '07, and Brother Pettie claimed he did not get my dues in time, but he ought to have gotten them on the morning of the 29th, not later than 9.30 o'clock, as they have a mail delivery in the morning and one in the afternoon. Now, I have got the registered receipt from him dated Jan. 10th, '07. Now, I cannot understand why he did not get it sooner. Then Bro. C. H. Little sent me a form to fill out for reinstatement, stating that through an error of Bro. Pettie the lodge would reinstate me and stand all expenses. Now, I filled the form out, but I had only to the 27th of February to get there, and I could not go on account of my being away the month before and it would cost me nine dollars and I would have to lose about three days, as it is about 143 miles from here to Cumberland. Now Mr. King, I think that 440 ought to refund that $2.75, as I never got my receipt. If I had gotten my receipt I would not have been expelled the day I sent my dues to Cumberland. They sent a transfer card the next day, and I did not know that 518 of McKeesport had asked for it, as I did not intend to stay at this place, as I was working out a notice at the time, and then I recalled it and stayed here on the P. and L. E. Now I have belonged to the B. of R. T. for nearly 8 years, and I have never asked any lodge to carry me over from one month to another, but I have voted for more than one member to be carried over when they were in hard luck, and I never got but three dollars out of 440, and that was one time I had my ankle hurt, and I never got anything out lodge 113 at Philadelphia, as I always have had good health. Now, I am not writing this to try to get back in the B. of R. T., but I am just stating plain facts, as I have paid about $250 in the B. of R. R. T. already. I think lodge 440 ought to refund my last $2.75 that I sent to Cumberland. I do not know what I was turned down for, but I think when you pass

one doctor for work you ought to be able to pass another one for the B. of R. R. T. as I am more stouter now than when I first joined the B. of R. R. T., as I am about 20 pounds heavier, and I never felt better in my life. Now Mr. King, see what you can do about having 440 refund that $2.75 to me. This is all I ask, as I do not feel like going in the B. of R. R. T. as an honorary member. Hoping you will look the matter up with 440, I remain, etc."

After the appellant was injured he went to see some of the members of the Cumberland Lodge to see what they were going to do about it. It is apparent from the whole conduct of the plaintiff that he did not know what his rights were in the matter, and that he was pursuing such course as he was advised was proper for the restoration of rights which he supposed he had lost through a mistake of the Cumberland Lodge. It is not conceivable that he would have done what he did do if he had known that his expulsion from membership in the order was illegal, and that in point of fact and law his rights under his certificate were still intact. Misapprehension, or ignorance of his rights furnishes the only reasonable explanation of his conduct.

Waiver or acquiescence (which is a species of waiver by tacit assent) "implies the abandonment of some right which can be exercised, or the renouncement of some benefit or advantage which but for such waiver the party relinquishing would have enjoyed. The general rule is that "there can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights and of facts which will enable him to take effectual action for the enforcement of such rights. No one can acquiesce in a wrong while ignorant that it has been committed, and that the effect of his action will be to confirm it." 29 *Am. & Eng. Ency. of Law,* 1093.

In this case the Court ruled, as a matter of law, that the plaintiff had waived or acquiesced in the wrongful acts of the defendant. In thus holding we think the Court fell into an error. There is a class of cases of which the case of the

*Spring Garden Mutual Ins. Company* v. *Evans,* 9 Md. 1, is an example, in which the Court ought to determine as a matter of law the question of waiver *vel non;* but where the question depends upon parol evidence of facts and circumstances it should be determined by the jury under the instructions of the Court. *Caledcnian Ins. Co.* v. *Traub,* 80 Md. 214.

The defendant denied its liability, disallowed the plaintiff's claim, and refused his appeal to the Beneficiary Board. Under these circumstances the plaintiff had a right to bring the suit, and the defendant is estopped to rely upon the provisions of the constitution we have quoted relating to the appeal to the Beneficiary Board, or to the proofs of loss, if it be assumed that it was the plaintiff's duty to furnish those proofs.

The judgment will be reversed, and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new trial with costs to the appellant above and below.*