# CHRISTIAN G. TRIESLER et al. *vs.* HENRY M. WILSON et al.

*Corporations—Election of Directors—By-Laws—Fraud on the Part
of the Judges of Election—Mandamus—Appeal.*

A by-law of a corporation provided that at the regular annual election the judges of election appointed by the board shall "judge of the qualifications of all voters and the sufficiency of all proxies offered and their decision shall be final and conclusive in all cases."  *Held*, that this by-law is only conclusive upon the members in the absence of proof of fraud upon the part of the judges of election.

Where a petition for a *mandamus* alleges that the petitioners were legally elected directors of the corporation at a meeting; that the defendants were returned by the judges as elected, and that the count was fraudulent and the result of the voting falsely announced; that lawful proxies were fraudulently rejected and unlawful proxies unlawfully deposited, such petition states a case within the jurisdiction of the Court.

This Court must decide cases as they are presented by the record, not as they may have been argued in the Court below, in contravention of the record.

Appeal from an order of the Court of Common Pleas (DENNIS, J.), dismissing the petition for *mandamus* in this case and giving judgment for defendants.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, ROBERTS, PEARCE and SCHMUCKER, JJ.

*Lewis Hochheimer* and *William Colton* (with whom was *W. H. Lawrence* on the brief), for the appellants.

The right to maintain the action in this form can not be seriously questioned. The proper *forum* to grant redress of such grievances as are here complained of is a Court of Common Law ; a Court of Equity has no jurisdiction. *Supreme Lodge* v. *Simering*, 88 Md. 276. And the appropriate form of action is by petition for *mandamus.* *American Railway Frog Co.* v. *Haven*, 101 Mass. 398 ; *People* v. *Steele*, 2 Barb. 397, 416–19.

The case is then narrowed down to the single proposition as to whether or not redress at law for the gross wrongs complained of in this suit is barred by the by-law above recited. In other words, is the certificate of the inspectors, or judges of election, in this case, to be treated by the Courts as a " final and conclusive decision " of all matters connected with the validity of the election in question ? A by-law such as the one here invoked to choke off judicial investigation and bar redress of grievances according to law can, of course, have no scope for operation, if the certificate of the electors is in accordance with the truth. It can only operate in cases where the certificate is a false one. If the

certificate is true, if the things therein stated did take place
as stated, there is no room for the working of the by-law.
The proposition before the Court, upon analysis, resolves
itself into this : that effect be given to the by-law of a cor-
poration by virtue of which a false certificate of election en-
ables the persons therein falsely stated to have been elected
to control and govern the business and affairs of a corpora-
tion in spite and defiance of the legally declared wishes of
the membership, and that there can be no judicial investiga-
tion of the truth, no legal remedy for an abuse which strikes
at the root of the prosperity of every body corporate.   To
state the proposition is to make manifest its injustice.   The
petition avers, that this company is a prosperous business
concern and proceeds to charge, that the interests of the
members " are greatly jeopardized by having its affairs con-
trolled by persons who hold the responsible office of director
in consequence of the most flagrant violation of the rights
of the majority of members and in consequence of fraudulent
practices exerted in their interests, their continuance in their
usurped positions being a gross fraud upon your petitioners
and the membership generally, a matter of great scandal and
of serious menace to the welfare and prosperity of said body
corporate."   Who can doubt this, if the facts are as alleged ?
Persons who capture the control of a business corporation
by such means and devices as are charged in this case pre-
sumably do so for no honest or righteous purpose.   It is
not intended to make either charges or insinuations against
anyone, but the case in which the looting of the treasury of
a society is intimately connected with the stealing of the
ballot is not difficult of conception.   Yet, the contention in
this case is, that if, through either the blunder or fraud of
election inspectors, persons not in reality elected are merely
declared to have been elected, the right of the members to
select their officers and thus govern their own concerns is
irretrievably lost.   It is not difficult to conceive, that per-
sons who once obtain power by such corrupt means as are
here charged will not hesitate to perpetuate themselves in

power. It seems to us almost like trifling and waste of words to urge upon the Court the utter want of justice or reason in the contention by which it is sought to deny to the appellants an investigation and a hearing. Unless sustained by the clearest and strongest authority, such a contention as set up in this case should meet with no favor in a Court of Justice. There is nothing in legal principle or reason to support it, and as far as authority and precedent are concerned, the few cases which the diligent search of counsel has disclosed in which such a question as the one at bar has ever arisen, strongly and clearly sustain the proposition, that while inspectors, or judges of election, may be provided for by the by-laws of a corporation, their report or return must not be treated by the Courts as conclusive. *Commonwealth* v. *Woelper*, 3 S. & R. 29, 33; *People* v. *Vail*, 20 Wend. 12; *People* v. *Seaman*, 5 Den. 409.

*Charles J. Bonaparte*, for the appellees.

At the election held in July last, there were, beside the two vacancies created by expiration of term of service, two others, arising from the death of one director and the resignation of another, and if these four vacancies could be filled by persons not in sympathy with the previous conservative management of the company, the assistance of only one other director would enable them to prevent the organization of the board or the re-appointment of any of the former officers, and the assistance of two would give them the control of the company. It is alleged in the answer that, under these circumstances, the appellant, Christian G. Triesler, who alone made affidavit to the petition filed in this cause and who had been for a number of years in the employ of the company and had been discharged therefrom, attempted, with the assistance of certain other persons, some of whom are mentioned in the answer, to obtain proxies from enough policyholders to enable him to secure his own election, as director, and that of three others (the remaining appellants) in sympathy with his purposes. At the election, his ticket

was defeated by a very close vote, two of the successful candidates obtaining 63 and the other two 62 votes each, while two of the appellants received 61 and two 60 votes respectively.   It appears, however, by the certificate of the judges of election, that the closeness of the vote arose from the fact that 25 ballots tendered on behalf of the four unsuccessful candidates were received and counted by the judges, notwithstanding the protest of one of the appellees and of the then president of the company, and notwithstanding the fact that they were so tendered more than an hour after the balloting had been declared closed by the judges.

Although the judges of election would seem, from this incident, to have been somewhat unduly favorable to the present appellants in their rulings, the latter applied for a *mandamus* addressed, not to the judges, nor yet to the corporation, but to the successful candidates, requiring them to vacate their offices as directors and " yield the possession and incumbency " of the said offices to the appellants.   In other words, the appellants virtually asked the Court of Common Pleas to itself assume the duty imposed by the by-laws upon the judges of election, that is to say, to count the votes cast, pass upon their validity and the regularity of the proxies on which some of them were based, and award the offices to the candidates whom it should find to have been elected.  The appellees, while answering fully all those averments of the petition affecting the merits of the controversy, pleaded the above quoted provision of the by-laws, and the action of the judges thereunder, as shown by their certificate, in bar of all the relief prayed by the petition.  The only question in this appeal is, whether the decision of the judges of election is, or is not, open to review by the Courts, it being assumed that they acted in good faith under the by-law cited in the answer; and it is equally clear that the answer to the question will depend solely upon the validity of the by-law itself, since the by-law provides in terms " that their decision *shall be final and conclusive in all* cases."

The corporation is a mutual life insurance society, of which each policy-holder is a member. He is presumed to join the association with full knowledge of the provisions of its charters and by-laws. If he becomes dissatisfied with these, he has at any moment a remedy by giving up his membership. It is a well-recognized principle of law he is bound by a provision of the by-laws, making the determination of a tribunal created by the corporation itself conclusive as to any controversy which may arise between the members or between the corporation and one of its members. In the case of *Karcher* v. *Supreme Lodge,* 137 Mass., 368, the Court says: " Karcher was suspended by the tribunal which he had chosen to determine the question, according to rules to which he assented in becoming a member, and he received notice of the proceeding. The action of this tribunal according to its rules, on a question which it had authority to decide, honestly taken, after the requisite notice to him, cannot be collaterally reviewed in this Court on the ground that facts existed which, if brought to the notice of the tribunal, would have warranted or required a different decision."

The same doctrine has been applied in many other cases, as, for example: *Dawkins* v. *Antrobus,* L. R. 17, Ch. Div. 615; *Connelly* v. *Masonic Mutual Benefit Association,* 58 Conn. 552; *Chase* v. *Cheney,* 58 Ill. 509; *Levy* v. *Magnolia Lodge, &c.,* 42 Pac. Rep. 889. Many more decisions by Courts of our sister States or of England may be cited in support of this proposition, but a multiplication of authorities on this point is evidently needless, since it must be regarded as settled in Maryland by the decisions in *Anacosta Tribe* v. *Murbach,* 13 Md. 91; *Osceola Tribe* v. *Schmidt,* 57 Md. 98.

This by-law has done for the members of this corporation precisely what this Court has decided that the law does for the citizens of the State, and, when one considers how desirable it is that the right of an alleged policy-holder, or of one claiming to hold a proxy from such a policy-holder to

vote should be determined *at the moment* when his ballot is tendered, and how cumbrous and inconvenient is a resort to the Courts in such a matter, it may be safely said that (good faith on the part of the judges of election being, of course, postulated) the *possibility* of injury through error on their part is far more than outweighed by the *moral certainty* of injury through doubt as to the results of an election, and the necessary delay in dispelling that doubt by means of a judicial decision.  " Upon any other rule it could never be known who were entitled to vote until the Courts had decided the dispute.  The corporation or its officers would have to decide it for the time, and it would leave the election in uncertainty." *Hoppin* v. *Buffum*, 9 R. I. 513.  The whole subject of corporate elections is one fully under the control of a private corporation ; it may be regulated throughout by the by-laws, provided, of course, these are not repugnant to the charter or to the law.  *Detwiler* v. *Commonwealth*, 131 Pa. St. 614 ; *Commonwealth* v. *Cain*, 5 S. & R. (Pa.) 510 ; *Rollins* v. *Columbian Ins. Co.*, 5 Fost. (N. H.) 200 ; *State* v. *Tutor*, 5 Day (Conn.) 329 ; *People* v. *Crossley*, 69 Ill. 195.

PEARCE, J., delivered the opinion of the Court.

Christian G. Triesler and six others, members of the Mutual Life Insurance Company of Baltimore, filed a petition in the Court of Common Pleas of Baltimore City for a *mandamus* against the respondents, alleging that at a regular election for directors of said company, four of the petitioners were in nomination as directors upon one ticket and the four respondents were in nomination upon another ticket ; that in pursuance and execution of a conspiracy to defeat the will of the majority of the electors of said company, and to prevent a fair and free expression of the choice of the voters offering to exercise their rights as members and electors, certain members of the company, interested in respondents' ticket, did by artful, fraudulent and corrupt devices, at said election, so interfere with and manipulate the conduct thereof,

that though according to the actual tender of votes by law-
fully qualified electors, there was a majority of not less than
37 votes for petitioners' ticket, yet by means of such manip-
ulation and fraudulent actions the election was counted or
declared to have resulted in favor of respondents' ticket.
The petition further alleged that said fraudulent count was
accomplished by the rejection of the proxies of some 15
electors who offered to vote for petitioners' ticket and count-
ing or declaring said proxies instead as cast in favor of re-
spondents' ticket, by rejecting some four other votes law-
fully tendered for petitioners' ticket, and by permitting some
two persons who were not lawful electors, to cast votes for
respondents' ticket; that the result of the voting as *falsely
announced* was 63 votes for respondents' ticket, and 61 votes
for petitioners' ticket; whereas upon a true and honest count
the result is 65 votes for petitioners' ticket and 48 votes
for respondents' ticket; that 15 lawful proxies in writing
were *fraudulently rejected,* and some unlawful proxies in writ-
ing were *fraudulently deposited* in their place, the effect of
which changed the result of the election; that respondents
have wrongfully entered upon office as directors, and are
exercising and controlling the concerns of the company to
the exclusion of the petitioners, who are rightfully entitled
thereto; that the company was, and is, a prosperous busi-
ness concern, but that the corrupt and fraudulent installation
of respondents as directors and managers is a serious men-
ace to the welfare and prosperity of the company. The prayer
of the petition is for a *mandamus* commanding respondents
to vacate the office of directors and to yield the possession
thereof to the petitioners. The respondents answered deny-
ing that said election was attended, or its result affected by
fraud, conspiracy or any other form of misconduct on the
part of any persons whatsoever. Respondents also set forth
a certificate from the judges of said election showing the
election of respondents, and made in pursuance of the fol-
lowing by-law:

" Prior to the regular annual election, the board shall ap-

point three persons to be judges thereat. They shall judge
of the qualifications of all voters, and the sufficiency of all
proxies offered, and their decision shall be final and con-
clusive in all cases. They shall deposit their certificate of
the result of the election with the secretary of the company ;"
which by-law and certificate they pleaded in bar of all relief
prayed in the petition. Issue was joined, and it was agreed
by the parties that the by-law was correctly set forth, and
the certificate was made and deposited, as stated, and that
no one of the judges was a member of the company. The
case was tried before the Court without a jury, and the
Court (JUDGE DENNIS) passed an order declining to admit
or hear any proof in support of the allegations of the peti-
tion, and dismissed the petition and gave judgment for the
respondents, stating in the order that it appeared it had been
formerly ruled in one of the Courts in Baltimore City that
such facts constitute a bar to the relief prayed, and that in
accordance with the usage in that judicial circuit the Court
deemed itself bound to follow the precedent of this ruling.
The only matter, therefore, for our determination, is whether
*in this proceeding* the certificate of election under the by-law
which has been transcribed, is final and conclusive as to the
result of the election, and the consequent title of the respon-
dents to the office of directors.

The petitioners here seek not only the removal of re-
spondents, but the possession of their offices ; and since
the decision in *Harwood* v. *Marshall,* 9 Md. 99, it is settled
that *mandamus* is the only proceeding in which the judg-
ment could remove the occupants and install the petitioners,
if they can sustain their charges and are not barred by the
by-law. The appellees rely upon cases in Maryland and
elsewhere, in which it is held that in private beneficial insti-
tutions, such as the one here concerned, operating on the
members only, they may, for reasons of policy and conve-
nience affecting their welfare and perhaps their existence,
adopt laws for their government, to be administered by
themselves, to which every person who joins them assents,

and which require the surrender of no right that a man may not waive. It will suffice to refer to the Maryland cases so holding, which are : *Anacosta Tribe* v. *Murbach*, 13 Md. 91, and *Osceola Tribe* v. *Schmidt*, 57 Md. 102. It is stated in the brief of the appellees that the case referred to by JUDGE DENNIS, by which he deemed himself bound, was decided in 1886 in the Superior Court by JUDGE FISHER, who held *that in the absence of any proof of fraud*, the action of judges of election taken in pursuance of this by-law could not be reviewed, and on that ground refused the *mandamus.* The case now before us was argued upon the concession, as stated in the appellees' brief, " that the peti-tioners did not profess to have any evidence of bad faith on the part of the judges of election, against whom they could only allege honest mistakes of judgment," and it was stated that this admission was made in the Court below at the hearing of a preliminary question which arose, and that this circumstance led the Court to announce that it would be useless to hear the case on the facts as it should feel bound by the previous decision of JUDGE FISHER.

But we must consider and decide cases as they are pre-sented by the record, not as they may have been presented in the Court below, or as apparently regarded by counsel in their arguments and briefs in contravention of the record ; and when this record is examined we find not merely an averment of fraudulent and corrupt conduct by certain members of the company, affecting the result of the election, but a distinct charge that " *the count was fraudulent ;*" that the result of the voting was *falsely announced ;* " that lawful proxies were *fraudulently rejected,*" and " unlawful proxies were *fraudulently deposited,*" whereby the result of the election was affected. We have no means of knowing whether these charges are true or false. They may be wholly unfounded, but they confront us in the record, and their foundation can only be determined from evidence. Such fraudulent acts are not the acts of members elsewhere complained of in the petition, and in which the judges of

election may have had no participation, or the commission of which can be consistent with the exercise of their own honest judgment.    Only the judges could make a fraudulent count.    They alone could deposit and reject proxies, and announce the result of the election ; and if any of these acts were tainted with fraud, the fraud was theirs.

It is needless to say that such fraudulent conduct would vitiate the certificate of election as it vitiates any transaction into which it enters.    The members of this company agreed to be bound by the honest judgment of the judges of election, certified under the by-law, not by a corrupt and false judgment which no by-law can sanctify, or impose upon a Court of Justice.    As JUDGE FISHER's decision is stated in the brief of the appellees, he held this by-law conclusive only in the absence of proof of fraud, and JUDGE DENNIS declined to hear evidence only because it was represented to him there was no charge of fraud.

It therefore follows that the order must be reversed that the allegations of fraud on the part of the judges may be heard upon the facts.

> *Order reversed and cause remanded*
> *with costs to the appellants above and*
> *below.*

(Decided March 15th, 1899).