## CAMP No. 6 PATRIOTIC ORDER SONS OF AMERICA *vs.* AUSTIN E. ARRINGTON.

*Injunctions—Hearing of Case Before the Filing of Answers of Formal Parties— Benefit Societies— Provisions for Appeal to Tribunals Within the Order.*

When a bill for an injunction is filed against a benefit society and some of its officers and the latter are merely formal parties the Court may hear the case before the answers of the officers are filed.

A member of a benefit association cannot, in the absence of fraud, resort to the Courts for relief when there is a by-law or rule in force which requires him to exhaust the remedies furnished by the Association.

When a member has been expelled from a benefit society and takes an appeal to a tribunal of the order, he is not entitled, pending the appeal, to apply for an injunction restoring him to the rights of membership until his case is finally determined on appeal, when the constitution of the order provides that "every member, before he shall be allowed to appeal to the laws of the land for the remedy of an alleged wrong, shall first exhaust every method of appeal founded by these laws."

*Decided January 7th, 1908.*

Appeal from the Circuit Court of Baltimore City (EL-LIOTT, J.)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER and BURKE, JJ.

*O. Parker Baker* (with whom was *Geo. E. Robinson* on the brief), for the appellant.

*J. Henry Baker*, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee filed a bill in equity alleging that on the 9th day of March, 1899, he became a member of the appellant, that he has always paid his dues and obeyed its rules and regulations, "and has never forfeited any of his rights and privileges and benefits of membership thereof." It alleges that charges were preferred against him on February 27th, 1906, by a member, who was the recording secretary, and "That the said charges against your orator have not been finally heard and determined and that at this time your orator's· standing and relation with said Camp is the. same as when the charges were first made." It further avers that by virtue of his membership in said Camp, and the payment of his dues, which he has always tendered to the proper officer when due and payable, he is a. member of the Funeral Benefit Association and of the Maryland Death Benefit Association, and upon his death the Camp is entitled. to receive $250 from each, to be paid to his wife; that by the rules and laws. of the Camp and of the

Benefit Associations he cannot pay his death benefit assessments directly to the Associations, but they must be remitted by the Camp, and that he has been informed that the Camp has ordered the Maryland Death Benefit Association to drop his name, "which would deprive the Camp of the sum of $250 upon the death of your orator."

Then after alleging that if his name is now, or will be, dropped from either or both of the associations it will work great injury and loss to him, there is a prayer for an injunction as follows: "That the said Camp No. 6, Patriotic Order Sons of America, of Baltimore City, its officers, members and agents may be enjoined from dropping the name of your orator from the rolls of the Funeral Benefit Association and the Maryland Death Benefit Association, and if the same has been dropped to have your orator's name replaced, so that in the event of your orator's death the said Camp may receive from each of the said death and benefit associations the sum of $250 until the said charges now pending are finally heard and determined, provided your orator tenders to the proper officers of said Camp the amount of his dues and assessments to date, and continues to tender his dues and assessments to the proper officer of said Camp until the said charges now pending are finally heard and determined." There is also a prayer for general relief and for process against the president, treasurer and four trustees of the appellant, but none against it, as a corporation.

The Circuit Court of Baltimore City passed an order that the appellant, its officers, members and agents be enjoined—using the language of the prayer as quoted above—unless cause to the contrary be shown by the 4th of April, 1907. The appellant filed its answer to each paragraph of the bill and alleged that the appellee had been expelled by the Camp "after a fair and impartial trial had been given, in accordance with the laws, rules and usages" of the order, and that an appeal had been taken which was still pending, not having been finally adjudicated. It also alleges that there is no contract between the appellee and either of the Benefit Associations, "and the only

contract existing is the contract between the defendant and said association to indemnify it upon the death of one of its members." It admits that it has ordered the Maryland Death Benefit Association to drop the name of the plaintiff, which it had done prior to the filing of the bill, "but avers in connection therewith, that if the action of the defendant, in expelling the plaintiff, is reversed upon the appeal pending, it will restore the name of the plaintiff, but does not think that it should be compelled to pay assessments to the funeral benefits associations amounting to thirty-five cents per month when it does not receive any revenue from the plaintiff." In another paragraph it alleges that "the plaintiff still retains whatever rights he may have to death benefits against this defendant, which cannot be determined until the final disposition of the case by the highest tribunal within the" order, and sets out a law of the order, which it alleges constitutes a part of the contract between the plaintiff and defendant, as follows: "Every member before he shall be allowed to appeal to the laws of the land for the remedy of an alleged wrong, shall first exhaust every method of appeal founded by these laws."

On June 14th, 1907, a decree was passed enjoining the appellant substantially in the language of the prayer, excepting the decree also enjoins the appellant from dropping the name of the appellee from its roll, and the proviso requires the appellant to *pay* his dues and assessments, instead of merely tendering them. It further requires the appellant through its treasurer to receive the money from the appellee when offered by him, "and remit and pay over a part of said money so received by it" to the Benefit Associations, in order that the appellee "may be kept in good standing with said association," so that in the event of his death his wife may receive from the Camp the sum of $250, from each of the said associations. From that decree this appeal was taken.

The record shows that the appellant was simply called upon to show cause why an injunction should not issue, but the form of the decree indicates that the case had been submitted for final hearing, as in addition to what we have mentioned

directs the payment of costs by the appellant. There is no agreement in the record for final hearing, no testimony was taken, and the rules and regulations of the order were not filed, except those in reference to appeals. Whether or not the appellant has the power to have the appellee's name replaced on the rolls of the Benefit Associations, in the present condition of the case before the order, is not shown, and other technical questions suggests themselves, but we will consider the main points raised by the appellant.

1. It is claimed that the case was not ready for hearing upon bill and answer of one defendant, that the other defendants did not appear or answer, and no decree *pro confesso* was passed against them. So far as the record discloses, process was not served upon any of the defendants excepting the appellant, but regardless of that, we see no occasion for the other defendants, who are officers of the appellant, being made parties. In the prayer for process the appellant is not mentioned as a party, although some of its officers are, but it did appear and answer. Apparently therefore the theory of the appellee was to have service on the appellant, through those officers—none of whom are mentioned in the bill, except in the prayer for process—but if they were intended to be parties they would, for the purposes of this proceeding, be merely formal parties, and therefore the Court could proceed to hear the application for an injunction without their answers being filed. *Miller's Eq. Proc.*, 702. In a proceeding to show cause why an injunction should not issue, an answer is given the effect that would be given to one on a motion to dissolve, and the practice in the two proceedings is similar in many respects, *Miller's Eq. Pro.*, 686.

2. Although the decisions in some other jurisdictions are to the contrary, the general rule is thoroughly established in this State that a member of a beneficial association cannot, in the absence of fraud, resort to the Courts for relief, when there is a by-law or rule in force, which requires him to exhaust the remedies furnished by the association. *Anacosta Tribe* v. *Murbach*, 13 Md. 91; *Osceola Tribe* v. *Schmidt*, 57

Md. 98; *Triesler* v. *Wilson*, 89 Md. 177; *Donnelly* v. *Supreme Council Catholic Benevolent Legion*, 106 Md. 425; and such laws are binding on the beneficiary, *Wiegand* v. *Fraternities Order*, 97 Md. 443. There is no opinion of the learned Judge who passed the decree in the record, and hence we do not know his reason for the conclusion reached by him, but it was probably on the theory that until the question had been finally determined on appeal, the appellee was still to be regarded as a member of the appellant, and entitled to the benefits provided for by the rules of the order. But the answer alleges that "the plaintiff was expelled by the defendant after a fair and impartial trial had been given, in accordance with the laws, rules and usages" of the order. The bill did not disclose the fact that he had been expelled, but if he was, "in accordance with the laws, rules and usages" of the order, as alleged in the answer, and for the purposes of his case it must be assumed to be true, as the case was heard on bill and answer, we cannot understand upon what principle the appellee should be granted relief on this bill, in the face of the law of the order in reference to appeals, above quoted. It would practically nullify such laws of these associations if a member be allowed to call upon a Court of equity to restore him to the *status* he occupied before the question was determined by one of the lower tribunals of the order, and so continue him until his case is finally determined on appeal. In the absence of some law of the order giving his appeal such effect, we can see no ground for a Court of equity taking that position—especially under a bill such as this. It is not pointed out in the bill how the appellee, or his beneficiary, would sustain any injury, if the action of the appellant is reversed on appeal. According to the answer, the Benefit Associations are not under any obligation to the appellee, but the appellant contracted to pay his beneficiary those sums and the Benefit Associations indemnified it for those payments. There is not even any suggestion of the inability of the defendant to pay them, but, if there was, and if the appellant did upon the death of the appellee refuse to pay them, the

remedy of his beneficiary would be against the appellant, and not against the Benefit Associations. The appellant would have the right to collect the sums from those associations, if they were due by them, and the beneficiary of the appellee would then be confined to her remedy against the appellant— either within the order, or if there be any ground for resorting to the "laws of the land," in the appropriate Court.

If the appellee is finally restored to the rights of a member, as they existed prior to his expulsion, the appellant could not escape liability on the ground that his dues had not been paid, if it refused to receive them. It cannot be supposed that a respectable order would assume such a position, but if it be attempted on that ground alone, no Court of justice would permit it, as it would be a manifest fraud. The appellant may therefore assume the risk of not keeping up his payments in the Benefit Associations, but the appellee could not be injured more by that than any other loss of the appellant, caused by its mismanagement or the bad judgment of its officers, if it be assumed that such action on its part amounted to either.

So without relying upon what might be regarded as technical objections to the form of the decree passed in this case, we must reverse it on the ground that the appellee has not presented a case that entitles him to relief, and as no reason is suggested why the bill should be retained, we will dismiss it.

> *Decree reversed and bill dismissed, the appellee to pay the costs, above and below.*