ANNIE J. McCANN
*vs.*

THE SUPREME CONCLAVE, IMPROVED ORDER
OF HEPTASOPHS, A Body Corporate.

*Fraternal Beneficial Orders: beneficiary bound by terms of cer-
tificate; members admitted by false representation; rights
of the society; estoppel of beneficiary.*

The beneficiary in a certificate of a fraternal beneficial order
is bound by the terms of the contract of the member.    p. 665

The balance that may be due on sick benefits by a Subordinate
Conclave on the part of the Heptasophs, is not applicable to
the payment of dues in arrear by the member to the Supreme
Conclave.                                          pp. 665-666

The financial officer of a beneficial fraternal order, learning
that a member had been fraudulently and erroneously elected,
refused to accept any more dues on his account, advising the
wife and brother-in-law of the member that it would be better
to allow him to "lapse out," but that if the wife preferred,
the matter could be brought to the proper board. No fur-
ther payments were made and no action taken by the wife or
on her behalf to bring the matter up before the proper board
of the order. Upon the death of the member, the wife, the
beneficiary, brought suit for the benefits; and it was *held,*
that, by her acquiescence, she was estopped from questioning
the right of the society to let the membership lapse, and that
since the dues had not been paid and were in arrear under the
rules of the order, she was not entitled to recover.    p. 664

If a fraternal beneficial order discovers that a member's ad-
mission had been procured by false and fraudulent repre-

sentations, it is its duty not to accept any more payment of dues on account of the member until the matter can be acted upon in accordance with the order's rules.      p. 664

*Decided February 15th, 1913.*

Appeal from the Baltimore City Court (Dawkins, J.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Pearce, Burke, Thomas and Stockbridge, JJ.

*George E. Robinson* and *O. Parker Baker,* for the appellant.

*Olin Bryan* (with whom was *Albert C. Tolson* and *John C. Tolson,* on the brief), for the appellees.

Thomas, J., delivered the opinion of the Court.

This suit was brought by the widow of Joseph A. McCann, Jr., of Baltimore City, on a benefit certificate issued to him on the 25th of May, 1908, by the Supreme Conclave, Improved Order Heptasophs, of Baltimore City.

This certificate, which is set out in the declaration, after reciting that it "is issued to Bro. Joseph A. McCann, Jr., a member of Eutaw Conclave, No. 276, Improved Order Heptasophs, located at Baltimore, Md., upon evidence received from said Conclave that he is a first rate contributor to the Benefit Fund of this Order; and upon the express condition that the statements made by him in his application for membership in said Conclave, and the statements certified by him to the Medical Examiner, both of which are filed in the Supreme Secretary's Office, be made a part of this contract, and upon condition that the said member complies with, is bound by, and subject to all and every provi-

sion of the Laws, Rules and Regulations now governing said Conclave and Fund," &c., then provides: "These conditions being complied with, the Supreme Conclave, Improved Order Heptasophs hereby promises and binds itself to pay out of its Benefit Fund to Wife, Annie J. McCann, within sixty days from Receipt of Satisfactory proof of Death, the sum of One Thousand Dollars, not more than the amount of one assessment, in accordance with and under the provisions of the Laws governing said Fund, upon satisfactory evidence of the death of said Member, and upon the surrender of this Certificate, provided that said Member is in good standing in this order at the time of his death. If death occurs within one year from date of admission, only fifty per centum of said sum shall be paid, if within two years only sixty per centum of said sum shall be paid, if within three years only eighty per centum of said sum shall be paid, provided death was not caused by suicide."

The *narr.* further alleges "That the said Joseph A. Mc-Cann, Jr., faithfully complied with and performed all and singular the agreements, obligations and undertakings of the said Benefit Certificate on his part to be kept and performed; and was a member in good standing in the said body corporate, at the time of his death"; that he died on the second day of February, 1911, and that his death was not caused by suicide; that he complied with all the provisions of the constitution and laws of the order up to the time of his death, "except so far as compliance therewith was prevented by the defendant"; that after his death the plaintiff, his widow, "duly made application to the defendant, as required by the laws of said order, for blanks upon which to make and furnish to the defendant satisfactory proofs of" his death, but that said defendant, "by its Supreme Secretary, refused to furnish to the said plaintiff such blanks, claiming that the said Joseph A. McCann, Jr., was not in good standing at the time of his death," whereas the said McCann "was entitled to be on the books of the said order, and in

contemplation of law was in good standing in said order at the time of his death."

The defendant pleaded "that it was never indebted as alleged" and "that it did not promise as alleged," and, for a third plea, alleged that the said Joseph A. McCann, Jr., did at one time hold a benefit certificate, which was issued to him on the 25th of May, 1908, "but that he, the said Joseph A. McCann, having failed to comply with the constitution and laws of the said defendant as embraced in section 357, Law XV, of the General Laws of the defendant society, which said section reads as follows: 'Section 357—Any member failing to pay his regular monthly or extra payment within the time prescribed for the payment thereof, shall thereby suspend himself *ipso facto* from all the rights and benefits of the order, as well as the rights and benefits of his beneficiaries, and such suspension shall be complete without any notice or action on the part of this conclave or any officer thereof, or of any officer of the Supreme Conclave; and such person shall continue under suspension until he is reinstated by the payment of all arrearages and compliance with all the other requirements for reinstatement, as provided by the Laws of the Order,' was *ipso facto* suspended from membership in Eutaw Conclave No. 276, one of the subordinate conclaves of the defendant society, and from the defendant society, and that he was never thereafter reinstated to membership in said defendant society, and, therefore, there is no liability to the plaintiff on account of said alleged membership in said defendant society, as said McCann was not a member of said defendant society at the time of his alleged death." For a fourth plea the defendant alleged, in substance, that section 248 of the general laws of the defendant provides that "Each member of the Order shall pay to the Financier of his Conclave, without notice, twelve regular payments in each calendar year, each of which shall be due on the first day and payable on or before the last day of each calendar month; and in addition to such regular monthly

payments such extra payments as may from time to time be required and laid," and that the said Joseph A. McCann, Jr., failed to pay the December payment for 1910 on or before the last day of the said month, and by reason thereof he was at the expiration of said last day of said month "*ipso facto* suspended from all the rights and benefits of the order"; that he was never reinstated in accordance with the laws of said order, and that his suspension "continued to exist from the first day of January, 1911," and that at the time of his death he was not in good standing in the "defendant society" and his beneficiary is not entitled to any "benefit or benefits on account of" said benefit certificate.

In reply to these pleas the plaintiff alleged that the defendant refused to receive from the said Joseph A. McCann, Jr., the regular monthly and extra payments within the time prescribed for the payment thereof, and notified him that it would not receive any further payments from him on account of same; that the said Joseph A. McCann, Jr., was not therefore lawfully suspended from the defendant society, and that the defendant, by its said refusal to receive said payment from the said Joseph A. McCann, Jr., waived the provisions of section 357 of its general laws. The defendant traversed these replications, and joined issue on the first replication, alleging that McCann had complied with all the laws of the defendant and was a member thereof at the time of his death, and the case was tried upon issue joined on the first and second pleas, on the first replication and on the rejoinders.

At the conclusion of the plaintiff's testimony the Court below granted an instruction that under the pleadings the plaintiff had offered no evidence legally sufficient to entitle her to recover, and from the judgment in favor of the defendant she appealed.

It appears from the evidence that the deceased became a member of the Eutaw Conclave and of the defendant on May 25th, 1908; that some months thereafter he was confined

to the Baltimore City Jail at the instance of the plaintiff, and remained there until he was removed to the Springfield Hospital, where he died about eight or nine months later. She says in her testimony: "Before I had him locked up, I noticed he acted queerly; he would come down stairs without any underwear, just a little shirt on"; that she would speak to him about it, and he would not be conscious that there was anything wrong with him, and she had him locked up because she did not want him to expose himself to the children; she did not know what was wrong with him; he was sent to the City Jail, and after he had been there about four or five months, they sent her word that his mind was bad, and after they found his mind was bad (at the jail) they took him to Springfield Hospital, which is a hospital in Carroll County for the insane, maintained by the State of Maryland, and that he died there about eight months thereafter, in February, 1911. John M. Kennedy, a brother-in-law of the deceased, testified that he was a member of Eutaw Conclave No. 276; that he attended the meetings regularly and generally paid McCann's dues and assessments for him when due, and that they were paid up to November 30th, 1910, but that those due after that time were not paid; that the plaintiff gave him the money to pay McCann's assessment due in December; that he attended a meeting of the conclave in December, and that as he approached the desk of the financial officer of the conclave, Albert H. Hock, the officer authorized to collect dues and assessments, to pay McCann's dues for December, 1910, "before he had time to make his business known" Hock said to him: "I want to see you; that man Joseph A. McCann, Jr., you have out there in the hospital, is not fit to be a member of this conclave"; that Hock had a letter making certain charges against McCann and told witness the contents thereof; that he asked Hock to give him the letter, which he refused to do, stating that it was the property of the Supreme Conclave, and that he then said to witness: "This man will get no more benefits from

this conclave, and the Supreme body will not pay him any insurance even if he dies; we have been informed that he will not live long; that he is an epileptic; he was born crazy and was an imbecile"; that witness replied that he did not think there was anything wrong with his mind until he was incarcerated, and that the officer replied: "Oh, that boy at twelve years old who would attempt an assault upon his mother is certainly an imbecile"; that he "attempted to reason the matter out with" Hock, and told him that the plaintiff had given him the money to pay McCann's dues, etc., but that he replied, "We will take no more, * * * ; that he would not get up in the conclave and have him expelled, but he would let him lapse out and ignore him entirely, and not take any more money from him." On cross-examination this witness further stated that McCann's monthly payment was $1.23; that the Eutaw Conclave had paid McCann thirteen sick benefits for the first year; that the first benefit was $2.50 and others were $5.00 each, making a total of $62.50, and that his wife received the same. In reply to the question, "Did or not Hock tell you that you had introduced a man into the conclave who was suffering from epileptic attacks and who was a cocaine fiend, and that it was the safer and better plan for them simply to drop the matter rather than have it come up before the conclave, as he was going to prefer charges against him, and did you (meaning witness) not consent to that action with Hock in Eutaw Conclave in December, 1910?" the witness replied: "He told me some of those things, but I never made any consent to anything." Witness further stated that Hock read to him the letter referred to, in which it was stated that McCann was a cocaine fiend; that he had been confined in the penitentiary twice; that he was an imbecile; that he was born crazy, and that he had attempted an assault upon his mother, and said for these reasons he ought to be expelled and driven out of the lodge, and told witness if he protested against such action he would take the matter up in the conclave and have him

expelled, and that he, witness, said: "Well, I will communicate with his wife and make known to her the circumstances." Witness states that he did report the matter to the plaintiff, and that they concluded "that they would await developments as to whether they (the lodge) were going to recognize him any further as a member"; that the plaintiff never received any more assessment cards and that they were convinced by that fact that the conclave intended to dismiss him; that in the conversation referred to witness told Hock that he would report the matter to the plaintiff and see what action she would take; that he never made any further effort to pay McCann's December dues or January dues, never took the matter up again with the financial officers, and never made any demand for sick benefits.

It does not appear from the record that any action was ever taken by the Eutaw Conclave or by the Supreme Conclave with reference to suspending or expelling McCann, but, as we have seen, section 357 of the general laws of the defendant provides that "Any member failing to pay his regular monthly or extra payment within the time prescribed for the payment thereof shall thereby suspend himself *ipso facto* from all rights and benefits, as well as the rights and benefits of his beneficiaries," and it is conceded in this case that McCann's dues for December, 1910, and for January, 1911, were never paid at all.

The appellant contends, however, that the defendant was estopped from relying upon section 357 by the refusal of the financial officer of the Eutaw Conclave to receive, when tendered to him, McCann's dues for December, 1910, and that McCann, and those acting for him, by such refusal, were relieved from any obligation to make a further offer of payment of his December dues or those payable after that date, and counsel for the appellant rely upon the cases of *Schlosser* v. *Grand Lodge, etc.,* 94 Md. 362; *Dague* v. *Grand Lodge,* 111 Md. 95, and *Camp No. 6* v. *Arrington,* 107 Md. 319. In those cases the Court held that where the failure to

pay was not due to the neglect of the plaintiff or the person to whom the certificate was issued, but to the conduct of the defendant or its agent, it could not be relied upon as a defense, and in the case of *Camp No. 6 v. Arrington, supra,* CHIEF JUDGE BOYD said: "If the appellee is finally restored to the rights of a member, as they existed prior to his expulsion, the appellant could not escape liability on the ground that his dues had not been paid, if it refused to receive them. It cannot be supposed that a respectable order would assume such a position, but if it be attempted on that ground alone, no court of justice would permit it, as it would be a manifest fraud." But it is quite apparent, we think, that those cases have no application to the facts of this case.

It is declared in the printed and published copy of the constitution and laws of the defendant that the object of the order is "To unite fraternally all white male persons of sound health and good moral character, who are socially acceptable, between eighteen and fifty years of age," and "To create and maintain, by stated and fixed contributions, a Benefit and Special Fund, from which, on satisfactory evidence of the death of a member who has complied with all the lawful requirements of the order, a special sum shall be paid to his beneficiary or beneficiaries as designated in conformity with the laws of the order."

Section 241 of the laws provides: "A person to be eligible to membership in the Improved Order of Heptasophs shall be a white male, between the ages of eighteen and fifty years, of sound health, of good moral character, competent to earn a livelihood for himself and family, and a believer in a Supreme Being."

The letter which Hock, the financier, read to Kennedy belonged to the defendant, and if the defendant or the financial officer (financier) of Euatw Conclave, the agent of the defendant for the collection of the monthly payments, discovered that McCann had been improperly admitted as a member of the order, and that his admission had been

secured or procured by false or fraudulent representations, it was his manifest duty not to accept from him any further payments on account of his membership, until the matter could be reported to, investigated and acted upon by the Eutaw Conclave or the defendant in accordance with the laws of the defendant. Hock, therefore, told McCann's brother-in-law, when he offered to pay McCann's dues for December, 1910, what he had learned, and that in his judgment McCann was not a proper person to be a member of said conclave and should be expelled; that the better course to pursue was, not to take any more money from him, and "let him lapse out," but that if he, Kennedy, protested against that course he would take the matter up in the conclave and have him expelled, and then Kennedy said to him that he would report the matter to McCann's wife (the plaintiff) to see what action she would take. Hock was never afterwards approached about the matter by either the plaintiff or her brother, and no further effort was ever made by either of them to pay McCann's December or subsequent dues to the defendant or to the Eutaw Conclave.

Under such circumstances, if the plaintiff did not assent to the course proposed by the financier of Eutaw Conclave, she should have protested and insisted upon paying McCann's monthly payments in order that the defendant or the Eutaw Conclave might have had the opportunity to take such action as would have relieved the defendant of an obligation that the officer claimed was improperly and unlawfully imposed upon it. On the other hand, if the plaintiff acquiesced in the course suggested by the financier she can not now complain of the consequences of her own election. To permit her *now* to protest against the course advised by the officer of Eutaw Conclave and adopted by her would result in a great wrong to the defendant and to those who would be required to contribute to the fund out of which her claim would be paid.

The facts of the case are not disputed. McCann failed to pay the monthly payments due in December, 1910, and

January, 1911, and thereby, under the laws of the order, "suspended himself from all the rights and benefits of the order, as well as the rights" of his beneficiary.

The fact that McCann was sick or insane does not relieve the plaintiff of the consequences of his neglect. The laws of the defendant do not make exceptions of such cases, and his beneficiary is bound by the terms of his contract. *Yoe* v. *Howard Mut. Benev. Asso.,* 63 Md. 86; *Hawkshaw* v. *Supreme Lodge K. of H.,* 29 Fed. R. 773. In *Yoe's case,* the Court said: "The member failing in his lifetime to make payment, and the thirty days having expired before his death, and no one being authorized to make it after his death, to hold the association liable, notwithstanding no payment of the assessment had been made, would disregard the mutuality of the obligation of members, as well as do violence to the terms and plain intent of the article of the association which we have quoted. * * * And the fact that he was part of the time sick and wholly unable to attend to business constitutes no sufficient legal excuse for the default whereby this consequence was produced."

It is also urged by the appellant that as there was some evidence to show that in December, 1910, there was a further amount due McCann on account of sick benefits, it should, as far as necessary, have been applied by the Eutaw Conclave to the payment of his monthly payments due in December, 1910, and January, 1911. But section 307 of the laws of the order declares that "Ninety-three per centum of each regular monthly payment levied and called shall be paid into the Benefit Fund, and shall not be appropriated for any other purpose than the payment of death benefits, or placed in the Special Fund. The balance, being seven per centum of each monthly payment, shall be paid into the General Fund, as provided in the Supreme Conclave Constitution," and section 395 provides: "Conclaves may, in their discretion, provide for the payment of sick benefits. The

Supreme Conclave assumes no responsibility for sick benefit regulations adopted by any Subordinate Conclave."

These funds are, therefore, distinct, and the Eutaw Conclave was not authorized to apply any part of the sick benefit fund to the payment of amounts due the "Benefit Fund."

In the case of *Hansen* v. *Sup. Lodge K. of H.,* 140 Ill. 301, where the subordinate lodges were authorized to provide for sick-benefits, the Court held, quoting from the syllabus, "that under these laws the sickness of a member, and his right to weekly benefits, did not relieve him from the obligation to pay assessments by the Supreme Grand Lodge, and that his sick benefits could not be applied to their payment, such application being confined to the dues and fines of the subordinate lodge." See also *Hawkshaw* v. *Sup. Lodge K. of H., supra.*

It follows from what we have said that there was no error in the ruling of the Court below withdrawing the case from the jury, and the judgment appealed from must be affirmed.

*Judgment affirmed, with costs.*