# UNIVERSAL LODGE NO. 14 FREE AND ACCEPTED MASONS

*vs.*

# HENRY VALENTINE.

*Masonic lodges: arbitrary action; right of members; appeal to courts; when will lie.*

Where a member of a lodge against whom charges have been preferred to the Grand Lodge is not given reasonable notice of the charges in accordance with the constitution, rules and regulations of said order, and where it appears that no appeal from the action of the Grand Lodge is provided for in the constitution, rules and regulations of said order, a Court of Equity will intervene to declare the action of the Grand Lodge void.  p. 606

*Decided June 24th, 1919.*

Appeal from the Circuit Court of Anne Arundel County. (THOMAS, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER and STOCKBRIDGE, JJ.

*W. Ashbie Hawkins* (with whom was *Hawkins & Mc-Mechen* on the brief), for the appellants.

*James M. Monroe,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, Henry Valentine, was in January, 1914, and for sometime prior thereto, Master of Universal Lodge Number Fourteen, Free and Accepted Masons of the City of Annapolis, Anne Arundel County, Maryland, one of the subordinate lodges of the Grand Lodge of Free and Accepted Masons of Maryland.

On the 13th day of January, 1914, certain members of said subordinate lodge, in a letter addressed to Joseph P. Evans, Master of the Grand Lodge, one of the appellants, preferred charge against the appellee as Master of said subordinate lodge. The charges were that Henry Valentine had called a meeting of the subordinate lodge at Isaac & Rebecca Hall, not the place designated in its charter for holding its meetings, and had at such meeting transacted business pertaining to the lodge, without receiving authority from the Grand Master to hold the meeting at such place; and also with "passing an act to purchase a piece of property at the cost of thirty-five hundred dollars ($3,500) and to make a deposit payment of one thousand dollars ($1,000), with the right to give a mortgage for the remaining twenty-five hundred dollars ($2,500)." The property so referred to was to be, when purchased, a home for said subordinate lodge.

Section 6 of Article 1 of the constitution of the Grand Lodge, sub-title "Subordinate Lodges," provides:

> "Nor shall any lodge hold meetings, unless authorized by the Grand Master, in any place other than the one designated in its charter, under the penalty of a forfeiture thereof."

Section 2 of Article 1 of the same sub-title provides:

"It shall not be competent for a lodge to try its master. Any five members of the lodge or the District Deputy Grand Master may, however, impeach him before the Grand Master, who shall order an investigation of the charges; and if, in his opinion, they are well founded and of a character to justify the proceeding, he may suspend the delinquent and summon him to appear at the ensuing meeting of the Grand Lodge, to show cause why he should not be dealt with according to the regulations and usages in such cases established."

Upon the receipt of the letter containing the charges mentioned, Joseph P. Evans, Grand Master, appointed a commission, consisting of five Past Masters, to investigate the charges preferred against Valentine, and on January 14th, 1914, the Grand Secretary of the said lodge, wrote Valentine, telling him that charges had been preferred against him to the Grand Master 'for a violation of the law and masonic usages in holding a communication outside of the regular place of meeting without a dispensation," and further telling him that the commission would notify him as to the time and place of investigation.

This the commission did by letter of January 22nd, 1914, in which he was told that the members of the commission would sit in the City of Annapolis on February 2nd, 1914, to hear testimony in reference to the charges preferred against him.

To this letter Valentine replied by letter dated January 25th, in which he told them that he was employed as steward at the Naval Academy Officer's Mess, that on the date mentioned for the hearing he had to serve a supper, where his presence would be required from 8 to 11:30 P. M. and that it would be impossible for him to attend the meeting on the day named, but stated that "any other day will be all right for me. Please arrange and advise me."

The secretary of the commission wrote Valentine on January 26th acknowledging the receipt of his letter and said to him:

"I shall at once take the matter up with the commission and notify you at the very earliest convenience of whatever day they may set."

But in a postscript thereto, dated January 29th, the secretary stated that:

"The commission has instructed me to say to you that under no consideration can they change their date from February 2nd, and shall expect you and your witnesses present."

On January 30th, Valentine wrote Evans telling him of the engagement which prevented his attending the meeting of the commission on February 2nd and of the letter received from the commission saying they would not change their date of sitting and asked him

"to please have them, the commission, meet on Tuesday, Feb. 3rd, or Feb. 6th. Either of these days I can and will be glad to meet them. Hoping this meets with your approval."

On the following day, January 31st, Valentine again wrote the secretary of the commission telling him that it was impossible for him to be present on February 2nd, but saying:

"I can with pleasure be with you Tuesday, Feb. 3rd, or Feb. 6th. I have referred the matter to the Grand Master. Please confer with him."

On February 1st, Evans wrote Valentine stating in substance that he very much regretted that he could not have the commission defer their meeting as suggested by him, Valentine, but as the matter was at such time in the hands of the commission and as they had fixed February 2nd, he could not interfere in the matter.

The meeting of the commission was held on the evening of February 2nd at Annapolis, but Valentine was unable to attend for the reasons previously communicated to the commission. After its meeting at Annapolis on the evening

named, the commission made its report to the Grand Master, in which it is stated

> "that after a very careful review of all the evidence, we find that Brother Henry Valentine, W. M. Universal Lodge Number 14, F. & A. M., of Annapolis, Maryland, is guilty of a very grave offense by not complying with the second common laws of Masonry by not being present at the setting of the commission when summoned to do so, also treating the commission with contempt by not sending them a written statement at their place of setting on Feb. 2nd, stating just why he could not be present. Also Brother Henry Valentine we find has commit an offense in the violation of Article 1, section 6, on page 65. Also a violation of Article 7, section 22, page 63, in the Masonic Digest."

The first of these sections (section 6, Article 1), as we have stated, contains the prohibition against holding meetings in any place other than the one designated in the charter of the lodge without authority from the Grand Master.

The other (section 22, Article 7) provides:

> "That special committees may be appointed upon any item of business and may consist of as many members as the lodge, in its discretion, may think proper. All comittees shall report at the next stated meeting, subsequent to their appointment, and in writing, unless otherwise ordered by the lodge. All committees shall be appointed by the Master. Members who are appointed to serve upon committees shall feel bound in honor to give patient and diligent attention to the business of their appointment, and report their conclusions to the lodge without fear or favor."

We have stated section 22, Article 7, in full, in order that it may be seen of what specific offenses Valentine was found guilty and for which he was subsequently suspended.

On February 9th, Joseph P. Evans, Grand Master, wrote Henry Valentine stating that he would visit his lodge on

Tuesday night, February 17th, and ordered him to have his secretary notify all members of said subordinate lodge to be present and also to notify the District Deputy Grand Master of his coming, and that he be present at the meeting. Valentine attended the meeting on February 17th, and his statement of what occurred is as follows: "After the regular routine of business had been completed, the Grand Master, Joseph Evans, was introduced by the Worshipful Master to the lodge and I gave him the chair. * * * After taking the chair he * * * said, Brother Valentine come to the altar; I did so. He said, charges have been preferred against you by members of this lodge and a commission have been appointed to investigate and the charges have been sustained; you are suspended; go out of this lodge. * * * He then said to the Junior Warden call off this lodge from Labor to Refreshment, and * * * to the Junior Deacon, open that door and let Henry Valentine go out of this hall * * *.

Evans, in speaking of what occurred at the meeting of Feb. 17th said, "on my arrival about eight o'clock, found the lodge opened and in session. * * * I repaired to the Master's station, as is the custom, asked him for his jewel of office, he turned over the same to me, as is the custom, I then asked for the warrant of the lodge, which he refused to give, but after some explanation and a statement as to what I had learned his purpose and motives was, I taken it out of his hand, he very reluctantly turned it loose, it was in a case. I then * * * explained to him that the commission that had been appointed by me to investigate the charges preferred by the members of his lodge had made their report to me and their report sustained the charges and that I was here in the capacity as Grand Master to perform my duty as is the custom, the rules and regulations of the order, which under the circumstances, compel me to *suspend him as Master of Universal Lodge* until the meeting of the Grand Lodge in Hagerstown, August coming, at its regular sitting, at which time his case would be reported by me to the Grand Lodge. That he was also ordered to be present and if any irregularities or otherwise

he would have ample provision or opportunity to vindicate himself and his case and asked him to please retire from the lodge, whereupon he refused. I ordered the lodge called off and the door opened and demanded that he retire. He refused and I told him I would be compelled to order him forcibly ejected if he did not retire and he still refused. * * * He finally went out."

On the 13th of April, 1914, the appellee filed his bill of complaint in this cause, in which he stated the facts as we have given them and further alleged therein that the proceedings of the Grand Master, as well as the commission appointed by him to investigate the charges preferred against him, the plaintiff, were utterly null and void, and that "the corporation was without authority either in law or by the usages of said order" to hear the frivolous charges, and to find thereon, as stated herein.

It likewise alleged that if the action of the said commission and of the said Grand Master of said lodge is sustained, the plaintiff "would be denied the benefit of sick benefits in the event of his sickness and that his family would be denied the benefit of the death burial claim in the event of his death, and that his widow would be denied the benefit of the widow's allowance provided by said order in the event of his death, and that he is denied his rights and privileges as a Mason, and otherwise injured in his good name and reputation as a citizen," etc.

The prayer of the bill asked that the action of Evans, the Grand Master, "be declared null and void and that he be restored to his rights and privileges as a member of Universal Lodge Number Fourteen, and that the said Grand Master and Universal Lodge Number Fourteen be enjoined from interfering with him in the exercise of his rights as Master of said lodge, and from preventing him from attending the meetings thereof."

The Court passed an order thereon directing the writ of injunction to be issued, as prayed, unless cause to the contrary be shown, on or before the day therein named.

Evans, the Grand Master, answered the bill, denying that his action in suspending the plaintiff was null and void and alleging that it was in strict accordance with the laws and constitution of the order.

The other defendant, Universal Lodge Number Fourteen, the subordinate lodge, filed its answer admitting the facts alleged in the bill of complaint and consenting to the granting of the relief prayed.

While these proceedings were still pending in the Equity Court for Anne Arundel County, the Grand Lodge met in Hagerstown, in August, 1914.

In the meantime, however, Valentine had employed counsel and had taken an appeal from the action of the Grand Master in suspending him. The regularity and sufficiency of the appeal is not assailed.

Then Grand Lodge met on the 17th of August. Valentine was there with McGuinn, his counsel, and with witnesses in support of his appeal. The counsel of Valentine testified that when the question of Valentine's suspension was brought before the lodge by the Grand Master, he was not permitted to defend him. He stated that he arrived in Hagerstown on the morning of the 17th of August about noon. "I did not attend the morning session of the Grand Lodge. When I appeared the Grand Lodge had * * * taken a recess. I saw the Grand Master, Joseph P. Evans, and asked him for the personnel of committee that would hear Mr. Valentine's case. He told me that the commission had been appointed but he would not tell me who they were nor when they would meet. He did say to me, however, that you can not appear before that commission representing Brother Valentine, or Mr. Valentine, I don't know which he called him, for I have filed charges against you and you are a criminal, using his exact words, and you can not appear before that commission. I asked him for a copy of the charges that had been filed against me and he said 'That is all right.' I said, is it final that I can not represent Mr. Valentine? He said you can not appear before that commission. I then left him and reported the interview

to Mr. Valentine, but before leaving him in order to induce him to reverse his decision, I told him that I had prepared Mr. Valentine's case, that he had retained me to do so and I was there for the purpose of presenting his side of the matter, and it would put him in a very awkward position and he said that it didn't matter. I conversed with Mr. Valentine and told him that I had been rejected as his counsel, and said to him I don't know what to advise you; I can not represent you any further, the Grand Master says I can not."

Evans, when upon the stand, testified that he did not object to McGuinn's appearing as counsel for Valentine but thought it better that he should not appear for others, against whom charges had been made, in as much as he, McGuinn, was implicated and charged with them in the commission of the offense for which they were to be tried. The charges against them were that they had divulged the secrets of the order when upon the stand as witnesses in the equity case pending in Anne Arundel County, after having been subpoenaed to appear and testify therein.

Valentine testified that upon being told by his counsel that he was not permitted to defend him he did not enter the hall but remained upon the outside, and did not attend the hearing before the commission but returned to his home. Whatever may have been said and done by the Grand Master in relation to the hearing of the charges before the commission, that is, whether the statements made by McGuinn were true or untrue, it is a conceded fact that the charges submitted to the commission, named at the session of the Grand Lodge, for its consideration, included other charges than those upon which Valentine had been suspended. These charges were presented by the Grand Master at the morning session of the lodge on August 17th, in the absence of both Valentine and his counsel, and were considered by the commission on the afternoon of that day and at the next morning session the result of their investigation was reported to the Grand Lodge, and Valentine was then expelled. Thereafter on that day the

Grand Lodge adjourned. The additional charges were at such time unknown to Valentine or his counsel, as asserted by them, but if known to them, no sufficient opportunity was afforded Valentine to defend against such charges.

The report of the commission shows that such additional charges were considered and passed upon by them and that upon such charges, with those for which he had been suspended, Valentine was *expelled from the order.*

The report stated that they found Valentine guilty of the charges named in the report of the investigating commission, and also "of contumacy in refusing to act knowingly subjection to the Grand Lodge of the jurisdiction of Maryland." The contumacy of which he was found guilty consisted of his invoking the aid of the Equity Court for Anne Arundel County to redress the alleged wrong inflicted upon him by his suspension by the Grand Master.

Thereafter, the plaintiff amended his bill, by further alleging his wrongful expulsion from the order by the Grand Lodge and asked that it too be made a party defendant to his bill.

The amended bill was first demurred to, but upon its being overruled, an answer was filed by Evans and the Grand Lodge, in which they allege that the matter of Valentine's expulsion was considered at the session of the Grand Lodge in the presence of his counsel and with the knowledge of both of them, and no protest was made by either; that he failed to exhaust the remedies provided by the order; and further allege that his expulsion "was in conformity with the constitution laws and regulations of the Masonic Fraternity, and in strict regard of every right and privilege of the complainant."

Much evidence was taken upon the issues framed, and thereupon the Court "adjudged, ordered and decreed that the action of the Most Worshipful United Grand Lodge of Free and Accepted Masons of Maryland, expelling Henry Valentine, the plaintiff, from Masonry forever, be and the same is hereby declared to be null and void," and the clerk of the

Court was ordered and directed to issue the writ of injunction directed to the said Grand Lodge and to the said Joseph P. Evans, Grand Master thereof, enjoining and strictly forbidding the said Grand Lodge and the said Grand Master thereof from interfering with the plaintiff, Henry Valentine, "in the exercise of such masonic rights and privileges as he would have enjoyed as a member of the order, but for such action of the said * * * Grand Lodge in expelling him from Masonry forever." It is from this order or decree that this appeal is taken.

The law, applicable to cases of the character of the one before us is now well established in this State. Where it is shown that the proceedings instituted against a member of an association have not been conducted in accordance with the piescribed rules of procedure in such cases, and that in violation of such rules, he has been given no opportunity to appear and defend himself before the tribunal which is to hear and determine the charges preferred against him, the Court when called upon will not hesitate to interfere in his behalf against the invasion of such rights, if it be shown that he has exhausted the remedies furnished him by the association. *Grand Lodge* v. *Lee,* 128 Md. 42; *Zeliff* v. *Knights of Pythias,* 53 N. J. L. 537, and other cases cited in note to *McGuinness* v. *Forresters of America,* Vol. 3, 211, of Amer. & Eng. Annotated cases.

Section 1 of Article 5 of the Constitution, sub-title "General Regulations," provides:

"No penalty shall be inflicted by the lodge until after a fair trial and examination of evidence, or confession, the fact of guilt shall be manifest. The manner of trial shall be as follows: The written charge and specification shall be filed with the secretary of the lodge, whose duty it shall be to have a copy thereof delivered to the accused, as also a notice which shall give a reasonable time for the taking of proof to sustain the charges and specifications; also to inform the accused that he may, at the same time and place, offer proof to exculpate himself from such charges, and that the ac-

cused may also have leave to prove at such other time and place as he may designate upon giving reasonable notice to the master or presiding officer of said lodge; for which purpose the lodge shall allow reasonable time, if asked for, and in all cases the whole tesitmony shall be reduced to writing if not improper to be written, and shall be carefully preserved by the secretary of the lodge."

And further provides:

"The object of all Masonic penalties is declared to be twofold, to vindicate the honor of Masonry and to reform the erring brother. The only penalties recognized by this lodge or known to Free Masonry are expulsion, suspension and reprimand.

"The highest grade of Masonic punishment is expulsion. It is only to be inflicted for aggravated offenses or for contumacy in refusing to acknowledge subjection to the lodge, or for such offenses as are notoriously subversive of the foundations of virtue and morality, and would therefore be calculated to render the Masonic institution contemptible in the eyes of the community."

As was so well said by JUDGE THOMAS in his opinion, rendered in the lower Court:

"The only charge preferred against the plaintiff in January, 1914, and the only offense for which he was tried, was that he had violated section 6 of Article 1 by holding a meeting of the lodge at a place other than the place where its regular meetings were held, and the action of the Grand Master in February, 1914, was based upon the findings of a committee appointed by him to investigate that charge, and that was the only offense covered by his appeal to the Grand Lodge from the action of the Grand Master. It appears, however, from the report of the committee of the Grand Lodge that it investigated *other* and *distinct* charges against the plaintiff, and that its report and recommendation, which were approved by the Grand Lodge,

were based, at least in part, upon the findings of the committee that he was guilty of such *other* offenses. By the terms of the report it would seem that the committee of the Grand Lodge appointed to investigate the charges against Valentine based its recommendation of expulsion mainly upon its finding that he was guilty of 'contumacy' in having taken the lodge into court, and there is no evidence in the case that the plaintiff ever had had any notice that such a charge was to be preferred against him, or that he was given such reasonable opportunity to defend himself against such a charge as the constitution, by-laws and regulations of the order would seem to contemplate.

"It is not clear from the language of section 1 of Article 5, sub-title 'General Regulations,' of the constitution, quoted above, that it was intended to apply to trials in the Grand Lodge, but the justice of that provision would seem equally applicable to such trials. Certainly a member charged with such a serious offense as to warrant his expulsion from the order should be given some notice of the charge and a reasonable opportunity to defend himself before the tribunal appointed to try him. Even assuming, according to the contention of the defendants, that the plaintiff was in Hagerstown on the 17th of August, 1914, and then learned for the first time that the charges were preferred against him; that a committee had been appointed to investigate the charges, and that the committee would sit in the afternoon of that day to hear the case; that he did not appear before the committee, and that he did not defend himself in the Grand Lodge against the adoption of the report of the committee, it can not be said that he had such a fair trial as the constitution, rules and regulations of the order provided for, or as justice and fair dealing would require, or, under the circumstances disclosed by the record, that he acquiesced in what was done. *Camp No.* 6 v. *Arrington,* 107 Md. 319; *Worshipful Grand Lodge* v. *Lee,* 128 Md. 42; *Smith* v. *Merriott,* 130 Md. 453;

*Grand Lodge* v. *Lee,* 131 Md. 681.

"He should have been given such reasonable notice of the charges preferred against him as would have enabled him to prepare for his trial, and to have appeared with his witnesses and defend himself before the tribunal which was to hear and determine the charges against him, in accordance with the constitution, rules and regulations of the order. That, it would seem upon any view of the evidence contained in the record, was denied the plaintiff, and as no appeal from the action of the Grand Lodge is now provided for in the constitution, rules and regulations of the order, there would be no remedy for the wrong done the plaintiff unless a Court of Equity intervenes to declare the action of the Grand Lodge null and void."

The order and decree passed by the lower Court was in our opinion properly passed and should be affirmed.

*Order or decree affirmed, with costs.*