## CHARLES R. SMITH

### *vs.*

### RICHARD B. MERRIOTT ET AL.

*Gránd Lodge of Masons*: *powers of—*; *effect of decisions*; *when courts will review.*

By the constitution and governing rules the Grand Lodge of a fraternal society it was made the supreme governing body of the order, and is declared to be invested with the executive, judicial and legislative powers; such powers were declared to be final and conclusive upon all parties concerned until altered or revised, and the charter expressly declared that the judicial powers shall extend to the enforcement of the discipline upon the members of the Grand Lodge and upon individual members of subordinate chapters: *Held*, that the Grand Lodge has the power to inquire into and determine charges concerning the officers of a subordinate lodge who are accused of insubordination and of maliciously withholding property belonging to the organization.                                    p. 451

Only where such decisions are characterized by bad faith, malicious or manifest injustice, would they be proper subjects for judicial review by the courts.                              p. 453

*Decided March 13th, 1917.*

Appeal from Circuit Court No. 2 of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Augustus C. Binswanger* (with whom was *Warner T. McGuinn* on the brief), for the appellant.

*W. Ashbie Hawkins* (with whom was *Geo. W. F. McMachen* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

Charles R. Smith, the appellant, is a member of Hiram Holy Royal Arch Grand Chapter of Free and Accepted Masons. It is an association composed of subordinate bodies called Chapters, and its membership is made up exclusively of colored persons known as Royal Arch Masons. It will be referred to in this opinion as the Grand Chapter or Grand Lodge. It is supreme in its authority over its members and over the members of subordinate Chapters. It has a constitution and by-laws for its government.

Prior to May 8, 1915, the appellant was a member and secretary of a subordinate Chapter, known as Enterprise Lodge No. 3,—his term of office expiring in July, 1915. He had been a Past Master of said lodge and as such Past Master he became a member of the Grand Chapter. In May, 1915, Milton R. Lee instituted a suit in the Circuit Court No. 2 of Baltimore City against the Grand Lodge and Enterprise Lodge No. 3, and certain officials of said lodges. This suit was brought for the re-instatement of Lee as a member of said Subordinate and Grand Lodges,—he having been previously suspended as a member of said lodges. That case (*Worshipful United Grand Lodge, etc.,* v. *Lee*) found its way to this Court and is reported in 128 Md. 42. The appellant, as an official of the Subordinate Lodge, was made a defendant to that suit. He officiated as Secretary of the Enterprise Lodge No. 3 until August 25, 1915, and was summoned to testify for Lee in said suit. In July, 1915, charges

were preferred by the Grand Lodge against the appellant, and he was found guilty by a commission appointed to investigate them, but upon appeal to the Grand Lodge that body on August 16, 1916, reversed the finding of the commission. From July 30, 1915, until August, 1916, by virtue of the charges and suspension the appellant was deprived of his membership, and all fraternal relations in said Masonic order.

In November, 1913, the appellant was duly elected and installed as the Most Excellent Grand High Priest of the Grand Chapter, and in November, 1914, he was re-elected to said office for a term of one year, or until his successor should be elected and qualified. In November, 1915, the defendants,—who are the officers of the Grand Lodge,—were elected and installed. It is alleged in the bill that the appellant "is in possession of a bank book in the name of the Grand Chapter in the Savings Department of Maryland Savings Bank, and that your orator is in possession of the sum of fifty dollars, the property of said Grand Chapter; and that your orator has no other properties or moneys belonging to said Grand Chapter, or any books, papers or instruments of writing whatsoever; that your orator has always stood ready and willing to deliver the said sum of fifty dollars, and said Savings Bank book to the proper and lawful representative and officials of said Grand Chapter, and he is now ready and willing, upon the determination by this Court of such proper authority or official to receive said funds and bank book, to surrender and deliver the same over, but that your orator has refused and now does refuse to deliver said funds and bank book to said Merriott, or to any other of the defendants, because he charges that neither said Merriott nor any of said defendants have any rights in and to the same, nor would this complainant be relieved of responsibility should the same be turned over to said defendants for the reasons heretofore alleged by him." How long he has had possession of the bank book and money and how he got possession of the

same is not stated. It also appears from the eighth paragraph of the bill that the appellant has been charged by the Grand Lodge with insubordination and maliciously holding property belonging to it, and that it has appointed a commission and notified the appellant to appear before it in the Masonic Hall, on September 13, 1916, presumably for the purpose of a hearing on said charges. On September 11, 1916, the bill in this case was filed, in which it is prayed:

"1. That the defendants, and all of them, may be restrained from the further prosecution of the charges set forth in paragraph eight of the bill of complaint, until the further determination of this court.

"2. That the court take jurisdiction of this cause, and determine the proper person or persons to whom your orator shall surrender and deliver the funds of said Grand Chapter and the bank book controlling the withdrawal of the savings funds of said Grand Chapter, unless the court shall find that your orator is entitled to the possession of the same, until a proper and lawful election of officials of said Grand Chapter shall be held and proper persons installed to receive said funds and savings bank book; and for other and further relief."

The plaintiff rested his right to the relief prayed for upon four grounds: *First*, want of jurisdiction in the Grand Lodge to try him; *second*, the illegality of the election of the defendants as officers of the Grand Chapter and his right to be protected in paying over the funds in his hands which he admits belongs to the Grand Chapter; *thirdly*, the protection of his property rights as a member of the order; *fourthly*, that no appeal is provided from the action of the Grand Chapter; that the proceedings against him are not taken in good faith and that he apprehends that the defendants will cause his expulsion from the Subordinate and Grand Lodges.

We can have no doubt as to the power of the Grand Chapter to try the appellant upon the charges preferred against him. It is the supreme governing body of the order, and it

is declared by the constitution to be invested with executive, legislative and judicial powers. The constitution declares that the exercise of these powers and privileges—as defined in the constitution and general regulations,—are final and conclusive upon all parties concerned until altered or reversed, and it is expressly declared that its judicial powers shall extend to "the enforcement of discipline upon its own members and upon individual Royal Arch Masons," and it is further declared that all governmental powers, whether executive, legislative or judicial not expressly delegated by the Grand Chapter are inherent and reserved to it. The possession of such powers are essential to the good government and orderly conduct of the affairs of the order. Without them it would be powerless to protect itself against the acts or rid itself of an unworthy or discreditable member. Under the provisions of the constitution of the Grand Chapter the jurisdiction of that body to inquire into and determine the charges preferred against the appellant is, we think, clear, and the general rule is well established in this State and elsewhere, that with trials and decisions of such associations as the one before us, with respect to discipline and misconduct of members, the courts will not interfere. *Anacosta Tribe of Red Men* v. *Murbach,* 13 Md. 91; *Osceola Tribe No. 11* v. *Schmidt, Administrator,* 57 Md. 105; *Donnelly* v. *Supreme Council,* 106 Md. 425; *United Grand Lodge* v. *Lee,* 128 Md. 42.

As stated by Andrews, C. J., in *Connelly* v. *Masonic Mutual Benefit Association,* 58 Conn. 552, s. c. 18 American State Reports, 296: "If it is found that the proceeding was had fairly, in good faith, and pursuant to its own laws, and that there was nothing in it in violation of any law of the land, then the sentence is conclusive, like that of a judicial tribunal."

The defendants have been elected and installed as the officers of the Grand Chapter and are exercising the functions and powers of their respective offices. The bank book and money in the possession of the appellant is admitted to be

the property of the Grand Chapter and he should turn it over. He would incur no responsibility and would be amply protected by the delivery of the bank book and the money to the acting Grand Treasurer of the Grand Lodge. This Court has no power under the facts disclosed by the record to determine in this suit the validity of the defendants' election. In *Supreme Lodge* v. *Simering,* 88 Md. 276, JUDGE BOYD said: "In 1 *Thompson on Corporations* (1st ed.), sec. 764, it is said: 'A Court of Equity has no authority to determine the validity of an election of the officers of a private corporation and pronounce judgment of a motion. The title of directors who are in office under color of an election and who are, at most, irregularly chosen, can not be inquired into in a suit in equity instituted to restrain them from exercising the functions of their offices upon the ground of the irregularity in their election.' To the same effect are 17 *Ency. of Laws* (1st ed.), 52; *Johnston* v. *Jones,* 23 N. J. Eq. 216; *Mosley* v. *Alston,* 1 Phil. Ch. 790; *Hughes* .v. *Parker,* 20 N. H. 58. In *High on Injunctions* (1st ed.), section 774, it is said: 'Nor will a Court of Equity at the suit of stockholders of a corporation restrain its officers from the exercise of their functions, since such restraint would be equivalent to removal from office, and over such a subject equity has no jurisdiction.' See also third edition of the same work, section 1235, where the subject is more fully discussed. None of the Maryland cases cited go to the extent we are asked to go in this case. It is true they have sustained the right of stockholders to enjoin proposed illegal or fraudulent methods in the conduct of election of officers, but none of them have decided or intimated that this power can be used after an election, although irregular or even illegal, to remove those declared elected, or, what is equivalent to that, to prohibit them from exercising the powers vested in them by virtue of such election." * * * And if these officers be prohibited from acting, it would necessarily, for the time being, if not permanently, stop the regular business of the corporation; for if they can not act there are no others

that can, and unless these offices are filled the affairs of the association can not be conducted, as contemplated by its constitution and by-laws. The Court has no power to appoint officers in their stead, and to prohibit these from acting would probably result in the ruin of the association, which might be disastrous to the members, especially the older and delicate ones. The supreme treasurer could neither receive nor pay out money and the supreme commander could not even call a special meeting, as provided by the constitution, nor could he discharge any of the other important duties devolved on him, and so with the other officers."

The Grand Chapter has not tried and determined the charges against the appellant. What it may do as a result of its investigation we do not know and cannot anticipate. He is entitled to a fair and impartial trial and it is to be presumed that the Chapter will give him such a trial. But if the trial should be characterized by bad faith, malice, or manifest unfairness it would then become a subject of judicial review by the Court, which would restore any rights of the appellant of which he had been wrongfully deprived. But there are no facts alleged which would justify the Court of equity in arresting the exercise of the power of the Grand Chapter to proceed with the trial. The appeal before us was taken from the order of the lower Court which sustained a demurrer and dismissed the bill. It follows from the views expressed that the order was properly passed and that it should be affirmed.

*Order affirmed, with costs.*