PICTURE PLAYS THEATRE COMPANY OF TAMPA, A CORPORA-TION, *Appellant,* v. T. WILLIAMS, *Appellee.*

## Opinion filed April 18, 1918.

1. An answer in chancery is both a discovery and a pleading. As to matters of discovery it is evidence for the defendant: as to matters of pleading it is not.

2. An answer in chancery, although positive, and directly re-sponsive to an allegation in the bill, may be outweighed by circumstances, especially if it be respecting a fact which, in the nature of things, cannot be within the personal knowl-edge of the defendant.

3. New matter, or matter merely in confession and avoidance, relates to acts, transactions or happenings which occur sub-sequent to the acts complained of in the bill and which do not form a part of the original contract or transaction, but are independent of it; and relate to a different transaction. Where such new matters are set out in the answer, they are not such responsive averments as will be taken as true when the case is heard on bill, answer and replication.

4.  But where the averments relate to, or are a part of the original act, contract or transaction upon which complainant predicates his cause of action, or are concerning matters stated or inquired of in the bill, and state all the particulars of the acts, contracts or transactions charged and inquired into by the bill, they are responsive.

5.  On a final hearing of a cause in equity upon bill, answer and replication, after the time for taking testimony has expired, every allegation in the answer responsive to the bill is taken as true.

6.  Where an answer is confined to such facts as are necessarialy required by the bill, and those inseparably connected with them, forming a part of one and the same transaction, the answer is responsive to the bill as well when it discharges as when it charges the defendant.

Appeal from Circuit Court for Hillsborough County, F. M. Robles, Judge.

Decree reversed.

*McKay, Withers & Phipps,* for Appellant;

*Shackleford & Shackleford,* for Appellee.

BROWNE, C. J.—T. Williams, the appellee, brought a suit in chancery in the Circuit Court of Hillsborough County against the Picture Plays Theatre Company to have the action of the Board of Directors of the company forfeiting and cancelling his stock declared null and void, and that the thirteen shares of stock be declared valid outstanding stock of the company, and that he be declared the owner thereof and entitled to all rights and privileges of a stockholder. That the corporation be required to bring its books into court for examination,

that an accounting be had, and that the corporation be required to pay him his dividends.

The defendant answered, and the complainant filed a general replication, and after the expiration of the time for taking testimony the defendant set the cause down for hearing on bill, answer and replication.

The chancellor rendered a decree granting the prayer of the complainant, and the defendant appealed.

The case presented on the assignments of error and the record involves the application of the settled rule that "When a cause is heard on bill, answer and replication, after the time for taking testimony has expired, every allegation in the answer responsive to the bill will be taken as true."

The bill in substance charges that the complainant became seized and possessed and the absolute owner of thirteen shares of the capital stock of the defendant company of the par value of $100 per share which was fully paid and non-assessable; that he by the issuance of such stock certificate was duly recognized as the owner of such shares of stock, until on or about the 5th day of April, 1911; that on or about that date a meeting of the board of directors of the defendant company was held in the city of Tampa, and that a copy of the minutes of said meeting is attached to the bill, marked exhibit "B" and "prayed to be taken and made as much a part thereof as if set forth herein, *in haec verba;*" that by a resolution adopted at such meeting,— a copy of which is set forth in the minutes,—the directors attempted to cancel the complainant's stock and deprive him of it, and all right, title and interest therein; that since the date when the resolution was adopted the corporation has contended that his stock was forfeited and cancelled, and refuses to recognize him as a

stockholder, and claims that he has no right, title or interest in the shares and no interest in the company; that all the acts of the company and its directors are absolutely null and void; that at the time of the passage of the resolution the stock was and is now of great, value; that he never committed any act which would entitle the company to cancel his stock, and that the action of the company and its directors was entirely without any foundation of right; that the business of the company has been carried on for profit, and dividends declared on the capital stock, but no dividend has been paid or offered to him; that he has never been permitted to see the books of the company; that the company has refused and prevented him from being present at any of its corporation meetings and refused to disclose to him the financial condition of the company, the amount of its earnings or its net profits, or any statement of the affairs of the corporation; that the company has sufficient money available for such purposes to pay him his proportionate share of the dividends; that on or about the 3rd day of April, 1911, he made an assignment of his stock to one E. H. Calley, and that he made it for the purpose of giving Calley authority to represent him in obtaining a settlement with the company or authority to sell his stock, and that Calley was informed of and fully understood the purpose of the assignment, and received the assignment solely for such purpose, that no interest in the stock was conveyed to Calley who never claimed it and never had any title or interest in it, and that Calley returned the stock certificate to the complainant and ceased to represent him, and that by mutual understanding between him and Calley the authority or power given to him by such assignment has been wholly terminated. The certificate of stock is

attached to the bill. Answer under oath was expressly waived.

Exhibit "B" to the complainant's bill purports to be a copy of the minutes of the adjourned meeting of the board of directors of the Picture Plays Theatre Company held on the 5th of April, 1911, and contains a resolution setting out at length and in detail the organization of the Picture Plays Theatre Company, and all the facts and transactions connected with the issuance of its stock, and the acquisition by T. Williams of the thirteen shares of capital stock of the company which he is seeking to have recognized as valid and bona fide outstanding stock of the defendant company. The matters stated in the resolution if true make out a case of fraud in the issuance of seventy-five shares of the stock of which the complainant claims to hold thirteen shares.

The defendant's answer which was not under oath denied "that the complainant on or about the 10th day of June, 1910, became seized and possessed and the absolute owner of thirteen shares of capital stock" of the defendant company, and "avers the truth to be that a certificate for (13) shares of stock was procured to be issued to the said complainant through fraud, covin and deceit * · * * and although said certificate was issued to the complainant, he never did become in equity and good conscience the owner of the stock represented thereby;" "that it admits Certificate No. 5, of which Exhibit 'A' attached to the bill is a substantial copy was issued to the complainant, but says that said certificate was procured through fraud, covin and deceit, as hereinafter set forth, and denies that it ever recognized the said complainant as the owner of the shares of stock represented by said certificate after it discovered the said fraud;" it admits that a meeting of the board

of directors of the defendant company was held in Tampa, Florida, on April 5th, 1911, and that Exhibit "B" attached to the amended bill is substantially a correct copy of the minutes of such meeting, and that ever since the resolution adopted at the meeting became effective it has declined to recognize the complainant as the owner of the stock represented by Certificate No. 5, and declined to permit him to participate in the affairs of the company and denies that its acts in so doing are null and void, and avers the truth to be that it was right and proper that the action taken by the board of directors as set forth in the minutes of the meeting should be had; that it is immaterial whether or not the stock claimed by complainant is of great value, because complainant has no legal or equitable right, title or interest therein, and is not entitled to know the real value thereof; it admits that notice was served by its attorney on the complainant subsequent to the passage of the resolution, but says it is not true that the complainant has never committed any act which would entitle the respondent to cancel the stock and denies that its action in cancelling the stock was entirely without foundation or right, and denies that it is now actively engaged in the operation of the business for which it was incorporated, and avers the truth to be that for a long time the business was operated at a loss, and that it finally sold its physical assets for a sum of money less than cost, a part only of which has been paid and the sums so paid have been used in discharging company liabilities; it admits that no dividend has been paid or offered to complainant, and avers that complainant has never been legally entitled to receive a dividend, because he has never been in equity and good conscience the owner of the stock, and admits that the complainant has never

been permitted to see the books or be present at corporate meetings, but inasmuch as the complainant is not the owner of any stock in the company he has not been entitled to make such examination of the books or be present at any corporate meetings, and for the same reason respondent was under no obligation to disclose its financial condition to the complainant, and denies that complainant has ever been entitled to a share of the profits or any dividend, and admits that it has treated the stock of the complainant as cancelled and forfeited and·has refused to recognize him as a stockholder; that it is not proper for its books to be brought into court for examination because complainant is not entitled to any equitable interest as stockholder or otherwise in the company, that respondent is not informed about the transfer of the stock to E. H. Calley, but demands full and complete disclosure and proof of the transaction. The answer then proceeds to set forth fully and in detail all the transactions connected with the organization of the defendant corporation which it claims constituted the fraud charged against the complainant substantially as the same is set forth in the resolution adopted by the board of directors at the meeting held on April 5th, 1911, which is attached to and made a part of the complainant's bill.

Counsel on both sides have filed very full briefs, in which they discuss the rule governing the effect of the allegations of a responsive answer, when a case is heard on bill, answer and demurrer, after the time for taking testimony has expired, and cited many decisions where the rule has been considered.

Some of the courts seek to lay down general rules by which its applicability can be determined. Thus, some say that the true test is, if the whole subject matter of

the statement or allegation in the answer might have been left out without thereby furnishing just ground of exception to the answer, such allegations are not responsive to the bill. Bellows v. Stone, 18 N. H. 465; Eaton's Appeal, 66 Pa. St. 483. Mr. Justice SHARSWOOD in Eaton's Appeal, *supra,* says the test is "whether, as a witness on examination, he could be cross-examined as to the matter which he states in anticipation of his defence on a trial at law." See also Dunham v. Gates, 1 Hoffman's Chan. Rep. (N.Y.) 184. These rules, however, only tend to open new grounds for controversy, and extend the scope of investigation, by giving two rules to apply, when in the end regard must always be had to the case made in the bill under consideration, in determining what is and what is not responsive. The rule has been much discussed by the courts, and while there is no controversy over what it is, there is considerable discrepancy in its application. This discrepancy arises to some extent from the double purpose performed by an answer in chancery, which is both a discovery and a pleading. As to matters of discovery it is evidence for the defendant; as to matters of pleading, it is not.

While the rule is that on a hearing on bill, answer and replication all averments in the answer which are responsive to the bill, and which are not by way of defense or in avoidance, by matters which are not a part of the original act, contract or transaction in which the cause of action originated, shall be taken as true. There are some qualifications to be considered in applying the rule. Thus Mr. Chief Justice MARSHALL said, "An answer in chancery, although positive, and directly responsive to an allegation, in the bill, may be outweighed by circumstances, especially if it be respecting a fact which, in the nature of things, cannot be within

the personal knowledge of the defendant." Clark's Exrs. v. Van Riemsdyk, 9 Cranch (U.S.) 153.

Of like effect is the qualification stated in Dunham v. Gates, *supra*: "But the question of credibility is very different from that of admissibility. The court is not compelled to believe the answer, though bound to receive it. It may carry its refutation within itself; and of course the court is to decide whether the facts as sworn to, make out a case to bar the relief."

That portion of the rule which says that the answer will not be taken as true with respect to unresponsive allegations which are alleged by way of defense or in avoidance of the bill, has often been considered by the courts ,and has been most pregnant of litigation. There seems to be no adequate rule by which all answers can be measured, as the questions which may be presented are as limitless as the number of causes of action that may accrue and the methods adopted by pleaders in presenting and meeting them; so in the end we must be governed by the case made by the pleadings in each case. The authorities are varied, and at times approach very nearly to open conflict, although all try to steer by the same particular star.

The main contention in this case is whether the statements in the answer are responsive to the bill, or new matter in defense or by way of avoidance.

New matter, or matter merely in confession and avoidance, relates to acts, transactions or happenings which occur subsequent to the acts complained of in the bill and which do not form a part of the original contract or transaction, but are independent of it; and relate to a different transaction. Where such new matters are set out in the answer, they are not such responsive averments as will be taken as true when the case is heard

on bill, answer and replication. But where the averments relate to, or are a part of the original act, contract, or transaction upon which complainant predicates his cause of action, or are concerning matters stated or inquired of in the bill, and state all the particulars of the acts, contracts or transactions charged and inquired into by the bill, they are responsive.

This is illustrated by Lord Chancellor ELDON in Thompson v. Lambe, 7 Ves. Jr. 587, who remarked, "Upon the other point I am clearly of opinion, a person charged by his answer cannot by his answer discharge himself; nor even by his examination; unless it is in this way: if the answer or examination states, that upon a particular day he received a sum of money, and paid it over, that may discharge him; but if he says, that upon a particular day he received a sum of money, and upon a subsequent day he paid it over, that cannot be used in his discharge; for it is a different transaction."

We give a few citations from some of the leading authorities:

"An answer in stating the particulars of a transaction charged and inquired into by the bill, is responsive." Merritt v. Brown, 19 N. J. Eq. 286.

"It has been repeatedly held that whatever is fairly a reply to the general scope of the claim set up in the bill, whether in the stating or charging part, and whether by way of denial, excuse or avoidance, is evidence for the defendant." Rich, Adm'r v. Austin, 40 Vt. 416.

In Eaton's Appeal, *supra*, Mr. Justice SHARSWOOD said: "Thus if a plaintiff state an act, transaction or contract as the foundatian of his equity, the defendant has a right to state the whole of such act, transaction

or contract as in truth it was.   *   *   *   But another subsequent, independent and distinct fact, not stated in the bill, is not responsive, and therefore not within the rule." Hart v. Ten Eyck, 2 Johns. Ch. (N.Y.) 62.

It is true that in Green v. Hart, 1 Johns (N.Y.) 580; it was held that where a bill alleged that the complainant had paid a full and valuable consideration for a note endorsed to him by Green, who in his answer to this charge and the interrogatory founded upon it, alleged that part of the consideration for endorsing the note was usurious, the allegation of usury was merely in avoidance. This court has not followed the conclusion in that case, but we hold that an answer that sets up usury as a defense in a suit to foreclose a mortgage is responsive to the case made by the bill. Maxwell v. Jacksonville Loan & Improvement Co., 45 Fla. 425, 34 South. Rep. 255.

In Bellows v. Stone, *supra,* the court said: "The true distinction is between allegations upon those subjects which the bill requires some answer, and the allegations of new matter not stated or inquired of in the bill, but introduced by the defendant in his defense."

On a bill to redeem stock, alleging that it had been pledged for $500.00, an answer that the stock was pledged for $800.00 in addition to the $500.00 alleged in the bill, was held to be responsive, and not the setting up of a distinct and new matter, in avoidance of the equity admitted by the answer. Dunham v. Jackson, 6 Wend. (N.Y.) 22.

Shipman in his work on Equity Pleading thus states his deduction from all the authorities: "An answer, so far as it gives discovery, must be responsive, and not evasive. It must be full, direct and sufficient so far as the inquiries of the bill extend. An answer will, in

general, be responsive when it is confined to such facts as are necessarily required by the bill, and those that are inseparably connected with them, forming a part of the san.e transaction, including in some cases, new or affirmative matter."

The case of Reid v. McCallister, 49 Fed. Rep. 16, was a suit to enforce the lien of a mortgage against a husband and wife; the wife answered admitting that she signed the instrument, but only upon the false and fraudulent representation of the complainant's agent who obtained her signature and acknowledgment, and that she was ignorant and unable to read. A general replication was filed and the case heard on the pleadings alone. It was "held that the allegations of fraud were not new matter in avoidance, but were responsive to the bill, and were sufficient to prove that the wife did not execute the mortgage." In the opinion Judge DEADY said: "In this connection matter in avoidance is something subsequent to and distinct from or *dehors* the fact admitted; but, if the admission and the avoidance constitute one single fact or transaction, the answer is evidence of both."

In the appeal of Rowley, 115 Pa. St. 150, 9 Atl. Rep. 329, a bill was filed against Rowley, the Hero Fruit Jar Company and Kennedy the defendants, to compel them to admit the complainant as a stockholder in the Hero Fruit Jar Company. The bill alleged among other things that the capital stock of the company consisted of 5,000 shares, and that plaintiff as one of the alleged stockholders subscribed for a hundred shares, and that the defendants refused to give him a certificate and confederated to deprive him of his right as a share holder. The answer of Rowley one of the defendants denied that the plaintiff was ever the real owner of

any of the shares and alleged that plaintiff consented to the use of his name as subscriber for a hundred shares of stock under an agreement that upan demand he would transfer and assign them to Rowley as the true and equitable owner, which he has since refused to do. In deciding in favor of the responsiveness of the answer the court said "This is not subsequent matter alleged in avoidance; if true, it is a material portion of the facts in the case of the plaintiff which he accidentally omitted. I think the answer is responsive."

The rule in this State is the same as that which generally prevails in all of the courts in this country, that "On a final hearing of a cause in equity upon bill, answer and replication, after the time for taking testimony has expired, every allegation in the answer responsive to the bill is taken as true." Griffith v. Henderson, 55 Fla. 625, 45 South. Rep. 1003; Southern Lumber & Supply Co. v. Verdier, 51 Fla. 570, 40 South. Rep. 676; Lykes v. Beauchamp, 49 Fla. 333, 38 South. Rep. 603; Maxwell v. Jacksonville L. & I. Co., 45 Fla. 425, 468, 34 South. Rep. 255; Ropes v. Jenerson, 45 Fla. 556, 34 South. Rep. 955; Pierce & Patton v. Brunswick & Balke Co., 23 Fla. 283, 2 South. Rep. 366; Mayfield v. Wernicke-Chemical Co., 65 Fla. 113, 61 South. Rep. 191.

And this is true even if the answer is not under oath, the bill having waived answer under oath. Griffith v. Henderson, *supra;* Lykes v. Beauchamp, *supra;* Parken v. Safford, 48 Fla. 290, 37 South. Rep. 567; Mayfield v. Wernicke Chemical Co., *supra;* Indian River Mfg. Co. v. Wooten, 55 Fla. 745, 46 South. Rep. 185.

The question of when an answer is responsive to a bill has been discussed by this court in several cases, and the decisions are in line with the overwhelming weight of authority. In the case of Maxwell v. Jack-

sonville L. & I. Company, *supra,* the 4th headnote is, "Where an answer is confined to such facts as are necessarily required by the bill, and those inseparably connected with them, forming a part of one and the same transaction, the answer is responsive to the bill as well when it discharges as when it charges the defendant."

In the body of the opinion the court says, "The next contention involves a consideration of the effect of the answer in this case. It is stated in Cooper v. Tappan, 9 Wis. 361, that 'Where an answer in chancery admits facts which charge the defendant, and sets up also matters which discharge him, the latter is not evidence for him, unless the charge and discharge arise out of one and the same transaction, in which case the answer may state the whole transaction, and it will be held responsive to the bill, and be evidence in favor of the defendant.' "

In the case of Southern Lumber & Supply Company v. Verdier, *supra,* the court says, "We think that the answer, as far as it goes, is responsive to the bill. One says there was no consideration. The other responds there was a consideration and explains what that consideration was."

It requires very little change in this language to make it fit the instant case, where the complainant says there was no fraud, and the defendant responds that there was fraud and explains what the fraud consisted of. This court has gone further than some of the other courts in determining what statements are responsive to a bill, and gives to a defendant greater latitude. Thus they say that the defense of failure of consideration set up in an answer being something that occurred subsequent to the original transaction is not responsive to the bill, but that a denial of consideration would be.

This court, however, says that where "A chancery cause is set down for hearing, and is heard upon the bill, answer and replication, no evidence having been taken by either party, and the time has expired for taking testimony, and the answer sets up a failure of the consideration for which the instrument sued on was given, it is erroneous to decree a foreclosure in favor of complainant."

Applying the principles laid down in the foregoing decisions to the pleadings in the instant case we reach the conclusion after very careful consideration that the statements in the answer are responsive to the allegations of, and the case made by, the bill.

The bill alleges that on or about the 10th day of June, complainant became seized and possessed and the absolute owner of the stock; the answer denies this and avers the truth to be that the certificate for thirteen shares of stock was procured to be issued to the complainant through fraud, covin and deceit, and he never became in equity and good conscience the owner of the stock represented thereby. The charge of fraud is but a conclusion, and the defendant, therefore set forth all the facts and circumstances connected with the issuance of the stock, and with the organization of the company which it claims constituted the fraud. This was clearly responsive to the allegations of the bill, as it was a part of the acts and transactions inquired of by the complainant.

The complainant alleged that there was a meeting of the board of directors of the defendant company, and attached his bill and made a part thereof was what he charged was a correct copy of the minutes of such meeting. The resolution which was recited in the minutes, set forth all the acts connected with the organization of

the company and the issuance of the stock to complainant which it was alleged constituted the fraud, and charged that the acts of the board of directors in declaring that the stock was obtained through fraud, were null and void. The defendant denied that the acts of the corporation were null and void, and set forth everything that it claimed was fraudulently done in the organization of the company by complainant and others, in support of its denial of the statements in the bill.

The bill charges that the defendant declines to permit the complainant to participate in the affairs of the company, and that the acts of the board of directors in refusing to recognize him as a stockholder were null and void; the answer admits that the defendant declines to permit complainant to participate in the affairs of the company or to recognize him as a stockholder, but denies that its acts in so doing are null and void; but says it was right and proper for such action to be taken by the board, as is shown by the minutes of the meeting which the complainant attached to and made a part of his bill.

The bill charged that the action of the board of directors was null and void, and the allegations in the answer in relation to the alleged fraud in the organization of the company and the issuance of the stock to the complainant, were necessary averments to show that the defendant's action was not null and void.

Briefly the case presented by the bill is that the complainant was the owner of thirteen shares of capital stock of the defendant corporation, and that the defendant at a meeting of its board of directors declared that the stock so held by the complainant was obtained by him through fraud, which the complainant denied; that a resolution was adopted by the board of directors at

such meeting which declared the stock cancelled, and sought to prevent complainant from acting in the capacity of a stockholder and denying his right to any dividend; that such action by the board of directors of the defendant company was null and void.

These are the specific matters to which the defendant was required to make full, true and perfect answer. This he did, and the answer relates to the acts and transactions set forth in, and inquired of by the bill.

It is contended by the appellee that such parts of the bill as concern anticipated matters of defense, should be disregarded as surplusage, and that consequently anything in the answer relative to such allegations, is not responsive to the bill. We cannot accept that contention; especially as the anticipated matters of defense set out in the bill do not relate to anything that arose after, or, is disconnected with the matter constituting the primary basis of the suit, but constitute a part thereof, and are inseparable therefrom. 10 Ruling Case Law 207, says: "Allegations inserted in the bill concerning anticipated matters of defense must be answered as well as matter constituting the primary basis of the suit."

It is contended by the appellee that should this court hold that the answer is responsive to the bill that the decree of the chancellor ought to be affirmed, because the attempted cancellation of the stock by the defendant corporation was void and unauthorized by the statutes of this State, or the charter or by-laws of the corporation; and that cancellation of stock by a corporation is not a common law remedy.

The view which we take of this case from the statements of the answer which we find were responsive to the bill, makes out a case of fraud against the complain-

ant in the very acquisition of his stock; and a court of equity will not entertain a suit by a person holding stock which he acquired through fraud, to attack the validity of the action of the board of directors with regard to the stock.

If he has any rights with respect to his fraudulently acquired stock a court of equity is not the place for him to contend for them. On the case presented by the bill, answer and replication on which this cause was heard and determined by the chancellor, he has not come into court with clean hands. He stands as the fraudulent holder of certain shares of the stock of the defendant corporation and he cannot be heard in a court of equity to claim any relief from the action of the board of directors of the corporation with regard to such stock. A person who comes into court with a claim which the pleadings show to have had its origin in a fraudulent transaction cannot ask a court of equity to act upon the conscience of a defendant and force him to do right towards one whose own legal conscience is not void of offense.

In discussing the maxim that he who comes into a court of equity must do so with clean hands Mr. Pomeroy in his work on Equity Jurisprudence says: "The principle involved in this maxim is merely the expression of one of the elementary and fundamental conceptions of equity jurisprudence. We have seen that in the origin of the jurisdiction the theory was adopted that a court of equity interposes only to enforce the requirements of conscience and good faith with respect to matters lying outside of, or sometimes perhaps opposed to, the law. * * * Whatever may be the strictly accurate theory concerning the nature of equitable interference, the principle was established from the earliest days, that

while the court of chancery would interpose and compel a defendant to comply with the dictates of conscience and good faith with regard to matters outside of the strict rules of the law, or even in contradiction to these rules, while it could act *upon the conscience* of a defendant and force him to do right and justice, it would never thus interfere in behalf of a plaintiff whose own conduct in connection with the same matter or transaction had been unconscientious or unjust, or marked by a want of good faith, or had violated any of the principles of equity and righteous dealing which it is the purpose of the jurisdiction to sustain. While a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigant parties who come before it as plaintiffs or actors in such controversies. This fundamental principle is expressed in the maxim, He who comes into a court of equity must come with clean hands."

The answer which was responsive to the bill makes out a case of fraud in the acquisition of the thirteen shares of stock by the complainant, and he is therefore entitled to no relief in a court of equity.

The decree is reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.