NINER, ETC. ET AL. *v.* HANSON

(Two Appeals In One Record.)

[No. 267, September Term, 1957.]

300

*Decided June 16, 1958.*

*Motion for modification of opinion as to costs filed July 5, 1958, denied July 17, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Thornton C. Land* and *J. Francis Ford,* with whom was *Joseph H. A. Rogan* on the brief, for the appellants.

*Melvin J. Sykes* and *Francis D. Murnaghan, Jr.,* with whom were *Fred E. Weisgal* and *Weisgal & Sollins* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

These appeals are from a decree of the Chancellor declaring that the complainant, (appellee) Gotthard Hanson, is a member of the defendant union, Local 101, United Brotherhood of Carpenters and Joiners of America, and enjoining the defendant (appellant), its officers and agents, from directly or indirectly interfering with the plaintiff's rights as a member of the Local and requiring that he be recognized as a member and issued appropriate evidence of his membership. In an extended opinion, the Chancellor found that Hanson was improperly expelled by the Local, but stated that "This opinion of course does not preclude the Defendant union or any of its members from preferring charges against the Plaintiff in accordance with the Constitution and By-laws of said union in regard to any alleged infirmities prior to the alleged expulsion of the Plaintiff." The appellee filed a cross-appeal from this "adjudication".

The appellant does not challenge the jurisdiction of the equity court to grant the relief prayed. Nor does it challenge the Chancellor's finding of fact that Hanson's expulsion was not in compliance with the Constitution and By-laws of Local 101, although it is strongly contended that he was never eligible for membership. The appellant further contends that the appellee was barred from the relief sought on the grounds of *res judicata,* estoppel by judgments in prior litigation and by conduct, and by limitations and laches and unclean hands.

The facts are voluminous but may be summarized as follows: Hanson came to this country from Sweden in 1923, and shortly thereafter applied for membership in Local Union

2236 in New York City. He was rejected because he did not have sufficient understanding of the English language, but thereafter came into possession of the union card of one Helgeson, which he used illegally while working on union jobs. There was a conflict in the testimony as to whether or not Helgeson, who seems to have returned to Sweden, gave him the card and consented to its illegal use. In any event, Hanson subsequently turned in the card to Local Union 941, located in New Jersey, and received a new card in Helgeson's name which he used. In 1931, he had Helgeson's name changed on the card to the name of Arthur B. Hanson. Local 941 was consolidated into Local 349. Thereafter the officials of that union filed charges against Hanson and others for working below union scale, and he was fined $100, which he then refused to pay and has never paid, although he tendered payment some time prior to the institution of the present suit in 1956.

In 1935, Hanson, during a union membership drive, made application, in his own correct name, to join the Local 101 in Baltimore. He did not answer certain questions propounded in the application form, with reference to prior membership in other Locals of the Brotherhood, and whether he had ever been rejected or suspended by, or indebted to, any other Local. His application was accepted, but a year later he was dropped for nonpayment of dues but was reinstated upon payment of an initiation fee. In 1937 he transferred to Local 132 in Washington, D. C., and in 1938, transferred back to Baltimore on a "clearance" card.

In 1943 Hanson was elected president of Local 101. At that time Local 101 was under "trusteeship" and in charge of appointees of the United Brotherhood of Carpenters and Joiners of America, the parent union with headquarters in Indiana, hereinafter referred to as International. Indeed, Local 101 had been under "trusteeship" since 1926. Hanson had instigated a movement to obtain autonomy for Local 101 in 1939, and at that time the International had investigated his past record and conveyed information as to the "infirmities" in his membership to the Local, but no action was taken against him by the Local. Hanson, as the elected president

of the Local, sought to obtain possession of the books and records from the International appointee who had been acting as president of the Local, and made efforts to collect some $200,000 of funds claimed to have been embezzled by the appointees of International. A suit was instituted in Indiana by Hanson, as president of Local 101, in 1945, which was settled by payment to Local 101 of the sum of approximately $256,000. Hanson was selected to represent the Local at the convention of the International in Florida held April 22, 1946, and prior to the meeting sent printed circulars to all other Locals of International setting forth its differences with Hutcheson, the general president. At the convention, the Credentials Committee refused to seat Hanson, and the general president took the floor to state in detail, among other matters, how Hanson had misrepresented himself as Helgeson and been fined in New Jersey. The convention thereupon passed a resolution expelling Hanson from International.

On April 26, 1946, Hanson and seven others filed suit in the Circuit Court No. 2 of Baltimore City, as members and officers of Local 101, on behalf of themselves and all others similarly situated, against Hutcheson and twelve others individually and as members and officers of International, praying that the purported action of the convention be declared void, and for an accounting. On the same day, International filed suit in the same court against Hanson and Local 101, praying an injunction against interference with its "trusteeship". A hearing was held on a motion to dissolve a temporary injunction obtained by International, at which Hanson testified that he never went under the name of Helgeson, and never knew a man by that name; that he never belonged to Locals 941 or 349, or to any other union except Local 101; that he had never been fined by any local union. The hearing was adjourned, and when resumed a few weeks later, Hanson again took the stand and admitted that his previous testimony was false, and that on the day following the last hearing he had revealed his perjury to counsel, upon being confronted with a prospective witness who could expose him. He further admitted that the statements Hutcheson had made about him before the convention were substantially correct.

It was testified that Hanson had revealed at a meeting of the Local, following his revelation to counsel, that his testimony had been false, and had told the full story of the questioned events. Nevertheless, the Local had given him a rising vote of confidence. The appellant contends that this was a "rump" meeting, and sparsely attended. Hanson was not prosecuted for his admitted perjury. The court refused to dissolve the injunction, and ordered an election of officers to be held. An agreement of settlement was entered into between the Local and International, which was incorporated in a final decree. The agreement, in effect, granted local autonomy to Local 101. It recited that "The past is to be forgotten and is not to be used as a basis of any further complaint or Court action by Local or International against the other or their members." It contained a recital that Hanson had been expelled from International. The proposed settlement had been considered by a general meeting of the Local, and counsel for Hanson then stated that the settlement agreement did not resolve the question whether International had properly expelled Hanson, but that Hanson "still had his own rights in that regard". However, the Local advised the International that it would recognize the latter's expulsion of Hanson and not "regard or treat" him as a member. A new president was elected, pursuant to the settlement agreement and decree.

In August, 1947, Hanson individually sued International in Indiana, attacking the expulsion order. He paid into court all back dues and the fine levied in New Jersey. Apparently, the clerk of the court forwarded, or attempted to forward, these payments to Local 101. International defended on the grounds of the alleged infirmities in his membership, his perjury in the Baltimore case, the binding effect of the settlement agreement, and his unclean hands. The trial court found for Hanson and ordered reinstatement. However, on appeal to the Appellate Court of Indiana, *Hutcheson v. Hanson*, 98 N. E. 2d 688 (Ind.) (1951), the court held that the expulsion was void on the ground that International had no individual members, and no authority to interfere with the autonomy of its Locals. But the decree was modified so as to expressly reserve the question of Hanson's right to mem-

bership in the Local. Hanson tendered all back dues to the Local union, but they were not accepted, nor was his right to membership recognized. In April, 1948, Hanson brought a libel action against Hutcheson and others in Indiana, which was settled by the payment of a substantial sum of money to Hanson, who executed a release. The suit was thereupon dismissed "with prejudice". Hanson also brought two suits for an accounting, which were dismissed, in 1955 and 1956, on the ground that Local 101 was a necessary party. *Hanson v. Hutcheson,* 217 F. 2d 171 (C. A. 7th), and *Hanson v. Hutcheson,* 134 N. E. 2d 564, (Ind.). Hanson was advised by the then president of Local 101 in 1952, that he was barred from membership under the settlement agreement in 1946. No charges were ever preferred against him by the Local union, although an entry had been made in the Local's official card file, with respect to his membership status: "Expelled in April, 1946". This, of course, had reference to the action taken by International in Florida.

The appellant contends that Hanson's suit for reinstatement is barred by limitations and laches. In *Rettaliata v. Sullivan,* 208 Md. 617, 621, we said: "The Statute of Limitations is applied in equity by analogy where the remedies are concurrent. *Grandberg v. Bernard,* 184 Md. 608, 611; *Brashears v. Collison,* 207 Md. 339, 352." It has also been said that the analogy applies where the equitable jurisdiction is involved in aid of a legal right, but not where the equitable remedy is exclusive. *Russell v. Todd,* 309 U. S. 280, 289. See also *Pomeroy, Equity Jurisdiction* (5th ed.), §§ 419 e and 426 a. The appellant argues that the suit in the instant case "speaks fundamentally in tort", citing *Lucio v. Curran,* 2 N. Y. 2d 157, 167. That was a suit, however, for wrongful expulsion as well as reinstatement, and there was a strong dissent from the majority holding that the statute limiting tort actions at law applied. Likewise, in *Lowry v. International Brotherhood, Etc.,* 220 F. 2d 546, 548 (C. A. 5th), the suit was for damages for wrongful suspension. In *Barnhart v. Western Md. Ry. Co.,* 41 F. S. 898, 904, Judge Chesnut held that limitations applied, as well as laches, where suit was brought for wrongful discharge nineteen years before

suit was instituted. But on appeal (128 F. 2d 709, 714 (C. A. 4th) ; *cert.* denied 317 U. S. 671), the Court of Appeals disagreed with the finding that the suit was brought solely on . the theory of a common law action for damages, as to which limitations would apply, and affirmed on the ground of laches.

The bill in the instant case did not pray for damages, but only for reinstatement. It is generally held that *mandamus* will not lie for that purpose, at least against an unincorporated association such as a labor union. *Burke v. Monumental Div., No. 52, B. of L. Engineers,* 273 F. 707 (D. C., Md.). See also note 141 A. L. R. 617. The exact basis of the equitable jurisdiction is not entirely clear. See *Chafee, The Internal Affairs of Associations Not For Profit,* 43 Harv. L. Rev. 993; note 175 A. L. R. 438, 516; *Oakes, Organized Labor,* pp. 67, 68. But the writers and the more recent authorities recognize that a right of membership in a union is a valuable one, on which the sole means of livelihood of the possessor may well depend. Whether the right be considered as a personal right or in the nature of a property right, on one theory or another, the jurisdiction of equity is generally recognized. Equity is, of course, reluctant to interfere with the internal affairs of a private association, but may do so in a proper case, particularly where the ouster is arbitrary and not in compliance with the constitution and by-laws of the organization. *Martin v. United Slate Etc. Ass'n.,* 196 Md. 428. The appellant argues that the equitable jurisdiction is only concurrent, and therefore, the statute applies, citing *Wilhelm v. Caylor,* 32 Md. 151. In that case, however, the holding was rested upon the fact that the relief sought in equity, an accounting, could have been obtained in an action at law. Cf. *Rettaliata v. Sullivan, supra,* and *Maskell v. Hill,* 189 Md. 327, 337. In the instant case there was no prayer for damages, and in any event damages would not be an adequate substitute for reinstatement, which could only be obtained in an equity proceeding. The relief in equity is distinct from that which could be obtained at law. See *Cason v. Glass Bottle Blowers Ass'n.,* 231 P. 2d 6 (Cal.). We think the analogy fails, and the limitation prescribed in an action at

law, whether on the theory of tort or a breach of contract, is not applicable.

On the point of laches, it is well settled that the mere lapse of time will not bar the suit, but that there must be a showing of prejudice to the opposite party by reason of the delay, or circumstances making it inequitable to entertain the suit. Cf. *Jones v. Burgess,* 176 Md. 270, 278, *Rettaliata v. Sullivan, supra,* and *Croyle v. Croyle,* 184 Md. 126, 136. We find no such showing in the instant case. It may also be noted that, during most of the period of delay in filing the present suit, Hanson was diligently asserting his rights, or supposed rights, in Indiana. This litigation, if not directly related to the relief now sought, at least served to clear the way for the present suit.

The appellant strongly contends that the suit should have been dismissed because Hanson did not come into court with clean hands, by reason of his use of Helgeson's union card, defiance of union obligations, and his admitted perjury in the 1946 case. The first two reasons would seem to be pertinent only to the question of his eligibility to membership, and not to bar his resort to court relief for reinstatement. It has been said that the clean hands doctrine is one resting in the sound discretion of the court, applied not for the protection of parties, but for the court's own protection. *Mas v. Coca-Cola Co.,* 163 F. 2d 505. It has also been said that the maxim has nothing to do with disapproval of the character or past behavior of the applicant but only with the effect of his present application. *Bennett v. Westfall,* 186 Md. 148, and cases cited. Hence an impropriety that has been purged is not a bar. *Sherwood Co. v. Distilling Co.,* 177 Md. 455. "Equity does not demand that its suitors shall have led blameless lives." *Loughran v. Loughran,* 292 U. S. 216, 229, quoted in *Meeks v. Meeks,* 189 Md. 80, 87. It is clear that in the instant case the alleged conduct of the appellee, with reference to other Locals, was made known to the appellant at least as early as 1939, and it not only failed to take action thereon, but elected Hanson its president in 1943, and continued him in office until 1946. The third reason presents a closer question, but we think the Chancellor did not abuse

his discretion in granting the relief prayed, without condoning in any manner Hanson's admitted false testimony in 1946.

It has been said that the opposite party must show injury, in order to invoke the maxim. *Thomas v. Klemm,* 185 Md. 136; *First Nat'l. Bk. of Catonsville v. Carter,* 132 Md. 218; 2 *Pomeroy, Equity Jurisdiction* (5th ed.) § 399; note 4 A. L. R. 44. See also *Stockwell v. McAlvay,* 74 P. 2d 504 (Cal.), *cert.* den., 304 U. S. 547. In *Messick v. Smith,* 193 Md. 659, 668, Judge Markell, for the court, took occasion to criticize the injury test, insofar as it was sought to be applied to conduct violative of a statute, and pointed out that the holdings in the *Klemm* and *Carter* cases were that there was no fraud and hence no basis for applying the maxim. He found the true rule to be that "When a plaintiff's wrongful conduct is not contrary to law or public policy, he is not barred unless it injures the defendant." In that case the parties had participated in the illegal conduct and were in *pari delicto,* and hence the plaintiff could not "maintain suit—at law or in equity—directly arising out of the misconduct". In the instant case, we think it is clear that the appellant was not injured by the false testimony. The litigation terminated in a settlement wholly favorable to the appellant, leaving Hanson's status in abeyance. Hanson was not an adverse party in the former case to the appellant here, and his testimony was recanted, although under pressure, before the settlement agreement was entered into and before the matter was submitted to the court for decision. Hanson was not prosecuted for the offense or cited for contempt, and we fail to see that the false testimony had any influence upon the outcome of that case, or that it is material to the issue in the instant case. The principle underlying the maxim is that "equity will not aid an applicant in securing or protecting gains from his wrongdoing, or in escaping consequences of his wrongdoing." *Aged Men's Home v. Marley,* 156 Md. 478, 482; *Eq. Gas Lt. Co. v. Balt. Coal Tar Co.,* 65 Md. 73, 84. Cf. *Schaeffer v. Sterling,* 176 Md. 553. The relief sought was in no way predicated upon the misconduct. It has been held in a number of well considered cases that dismissal is not

required even where the complainant was guilty of fraud, perjury or suppression of evidence, where the wrongdoing does not result in benefit to the wrongdoer, or operate as a fraud or imposition upon the court in which relief is sought. *Berman v. Berman,* 191 Md. 699, 704; *Hunt v. Hunt,* 160 A. 358 (N. J.); *Langley v. Devlin,* 163 P. 395 (Wash.); *White Star Refining Co. v. Holly Lumber & Supply Co.,* 261 N. W. 72 (Mich.). See also *Hughes v. Eisner,* 81 A. 2d 394 (N. J.), (appeal dism., 84 A. 2d 626), and *Ruffin v. Crowell,* 46 So. 2d 218, 225 (Ala.). In other cases, the courts have stressed the fact that the wrong had been righted prior to the application for relief. *McNair v. Benson,* 126 P. 20, 24 (Ore.); *Huntzicker v. Crocker,* 115 N. W. 340 (Wisc.); 2 *Pomeroy, Equity Jurisprudence* (5th ed.), § 399, p. 100; note 4 A. L. R. 44, 59; 21 A. L. R. 2d 589, 593. In the instant case there was a prompt recantation before the termination of the prior hearing, and there is no reliance upon the testimony then confessed to be false. It can hardly be said that the present suit arises directly out of his misconduct or seeks to obtain any benefit therefrom.

We think there is no basis for the contention that the question of Hanson's right to reinstatement is *res judicata.* The Indiana decision (98 N. E. 2d 688) left the question open. Indeed, the modification of the decree of the lower court was based squarely upon the proposition that Local 101 was not a party and that the court lacked jurisdiction to adjudicate the question. The other Indiana decision, as well as the decision in the federal court, likewise made no adjudication of that issue because of the lack of a necessary party. The release and dismissal with prejudice of the Indiana libel suit, against Hutcheson and others, covered only claims for damages arising out of alleged defamatory statements and did not, and could not, adjudicate the question here presented. The recital in the consent decree passed in the Baltimore Court in 1946, that Hanson had been expelled from International, did not purport to adjudicate the validity of that action, and in fact its invalidity was conclusively established in the subsequent Indiana decision cited.

The appellant contends, however, that the alleged "in-

firmities" in Hanson's eligibility to membership, and his perjury in 1946, justified its action in striking his name from the rolls. That action was not taken on the basis of any charges, hearings or findings of fact, but simply on the basis that he had been properly expelled by the International. Since the invalidity of International's action has been judicially determined, the action of Local 101 must fall with it. We find it unnecessary to resolve the question whether the alleged "infirmities" or his conduct would have justified its action in a proceeding instituted by it, or to what extent the requirements of due process or the provisions of the constitution and by-laws of Local 101, which were promulgated by International, would prevent summary action on grounds other than the one relied on. We are not aware of anything in that constitution which would support an expulsion solely because of perjury which was confessed with sufficient promptness to prevent it from operating to the detriment of the Local or influencing its action in reliance thereon, however detrimental to the personal character and credibility of Hanson. We agree with the Chancellor that in 1946 Hanson was at least a *de facto* member of Local 101. Not only did the Local acquiesce in his membership status with full knowledge of the alleged "infirmities" in his eligibility, during the period from 1939 to 1946 in which he was elected president on several occasions, but the very form of the expulsion resolution of International, and the entry in the minutes of the Local, was a tacit recognition that he was in fact a member at that time. See note 17 Ann. Cas., 1145, 1146. A nonmember could hardly be "expelled", and the expulsion was not the action of the Local but of the International. For present purposes it is enough to hold that Hanson had standing to invoke the aid of equity against an action that was clearly illegal and arbitrary in any view of the case. See *Smith v. Merriott*, 130 Md. 447, 453; *Evans v. Brown*, 134 Md. 519; *Martin v. United Slate Etc., Ass'n., supra;* note 21 A. L. R. 2d 1397, 1421. We think, however, that the form of the decree was defective, and should have provided that the order of reinstatement was without prejudice to the right of Local 101 to take action, in accordance with its con-

stitution and by-laws, in regard to any alleged infirmities in the eligibility of the plaintiff to membership in said union, prior or subsequent to the purported expulsion.

In the cross-appeal, there is no merit in the contention that Hanson's right to reinstatement was conclusively determined in the Indiana case. The question was left open, and we now decide it simply on the basis that the ground relied on by Local 101 was wholly inadequate and hence arbitrary. The cross-appellant contends that the Local is estopped from bringing any proceeding for discipline or expulsion because of its waiver or acquiescence. We leave the question open. We merely hold that Hanson has sufficient standing to question the action taken in 1946. As we have noted, courts are reluctant to interfere in the internal affairs of unincorporated associations, and only do so in the clearest cases, and after other remedies have been exhausted. Cf. *Camp No. 6 v. Arrington,* 107 Md. 319. In *Cason v. Glass Bottle Blowers Ass'n., supra,* the California court modified a decree of reinstatement to provide that the reinstatement should be contingent upon the hearing of pending charges. There are no pending charges in the instant case, and we cannot anticipate what, if any, proceedings may be instituted, or whether any disciplinary or other action may ultimately be taken. As we read the constitution, this may depend, to some extent at least, upon a vote of the membership.

We shall accordingly direct that the decree of the Chancellor be modified as indicated herein and affirmed as modified.

> *Decree modified, and as modified, affirmed, costs to be paid two-thirds by the appellants and one-third by the appellee.*

PRESCOTT and HORNEY, JJ., filed the following dissenting opinion.

Gotthard Hanson, the appellee-plaintiff, who once admitted that he had committed perjury in the very court of equity in which he is now seeking relief, does not deny that his membership in the union of which he claims he is still a member

was originally obtained by misrepresentation, deceit, and fraud. Actually the appellee did not "recant" his perjury, as we understand the meaning of the word, although the majority says that he did. The fact is that when confronted by a witness who was present to expose the appellee's perjury, he then admitted it.

After a series of suits in this and other jurisdictions concerning the same matter as to which this suit is only another phase, and the lapse of over ten years, the appellee had the temerity to file in the same court in which he committed the admitted perjury his bill of complaint seeking the extraordinary remedy of a mandatory injunction to compel the appellant-defendant, the Local No. 101 of the United Brotherhood of Carpenters and Joiners of America, to restore his membership in the Local of which he claims the International Union illegally deprived him.

The Chancellor held that he was entitled to the injunction and so ordered. The majority of this Court, after modifying the order so as to permit reinstatement without prejudice, has affirmed the decree of the Chancellor. We disagree. In our opinion the plaintiff is in court with unclean hands, and is, therefore, not entitled to enforce the restoration of his ill-gotten union membership.

While it is true, that equity does not require that suitors shall have lived blameless lives, especially in regard to unrelated matters, it has often been held that no action arises out of fraud and deceit, nor does a right accrue to any one out of his own wrong. There are innumerable cases in which these principles of law have been applied. See, for example, *Bein v. Heath*, 47 U. S. (6 How.) 228 (1848); *Kitchen v. Rayburn*, 86 U. S. (19 Wall.) 254 (1873); *Deweese v. Reinhard*, 165 U. S. 386 (1897); *Picture Plays Theatre Co. v. Williams*, 75 Fla. 556, 78 So. 674 (1918); *Rust v. Gillespie*, 90 Okla. 59, 216 P. 480 (1923); *O'Gasapian v. Danielson*, 284 Mass. 27, 187 N. E. 107 (1933), to illustrate the principle of law with which we are here concerned. See also 19 *Am. Jur., Equity*, Sec. 471, and the annotation in 4 A. L. R. 44 (1919).

The same principles have also been expounded by many

law writers of the subject of equity jurisprudence. In 2 *Pomeroy, Equity Jurisprudence* (5th ed. 1941), Sec. 401, it is stated:

> "Whatever be the nature of the plaintiff's claim and of the relief he seeks, if his claim grows out of or depends upon, or is *inseparately connected with, his own prior fraud,* a court of equity * * * will leave him to whatever remedies and defenses at law he may have." (Emphasis added.)

See also Note, 32 B. U. L. Rev. 66, 68 (1952).

Professor Chafee in his *Problems of Equity* (1950), p. 31, aptly stated:

> "The real objection is not to one man's unclean hands, but to the whole enterprise. The court does not want to touch an unlawful transaction with a ten-foot pole. It always refuses to help carry it out, and it often refuses to pick up the pieces after the enterprise has fallen apart. *Courts were set up to enforce the law, not to enforce violations of law."* (Emphasis added.)

As we see it the applicability of the maxim depends upon the connection between the appellee's iniquitous acts and the appellant's conduct. In other words the question to be resolved in this action is whether the appellee's wrongful conduct is connected with, or related to, the dispute and not whether the appellant has been injured. Cf. *Carpenters' Union v. Citizens' Comm.,* 333 Ill. 225, 164 N. E. 393 (1928).

We believe that the decree of the Chancellor should be reversed and that the bill should be dismissed.