Lee **DUDLEY** et al.

v.

**Geoffrey D. WYLER.**

Supreme Judicial Court of Maine.

Argued April 28, 1994.
Decided Aug. 25, 1994.

Richard H. Broderick (orally), Broderick & Broderick, Lincoln, for plaintiff.

Clifford H. Goodall (orally), Dyer, Goodall & Larouche, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

ROBERTS, Justice.

Geoffrey Wyler appeals from a judgment entered in the Superior Court (Penobscot County, *Browne, A.R.J.*) awarding $16,755.50 to Lee Dudley and Gregory Dunn, d/b/a Glee Developers (Glee), on their complaint seeking the balance due for labor and materials used in constructing a dwelling. Wyler contends that the court erred in interpreting a pretrial stipulation as a concession that no written contract existed. He also seeks attorney fees and costs pursuant to the Unfair Trade Practices Act, 5 M.R.S.A. §§ 205–A to 214 (1989 & Supp.1993) (UTPA), based on Glee's failure to provide a written contract in compliance with the Home Construction Contracts Act, 10 M.R.S.A. §§ 1486–1490 (Supp. 1993) (HCCA). Finding no error in the result, we affirm the judgment.

In April 1988 Wyler entered into an agreement with Glee to build a house in Lowell. Glee began construction, but after repeated disagreements over payment, left the job in April 1989 without completing the house. Two months later, Glee filed a complaint claiming a lien on the property for labor and materials, and in the alternative seeking a judgment on an account annexed. Wyler responded with a counterclaim based on, *inter alia,* breach of contract and violation of the UTPA.

At the jury-waived trial, the parties presented conflicting evidence as to the nature of their agreement. Wyler submitted an eight-page document, initialed by both parties, that contained a handwritten provision for a $70,000 cap on total costs, as well as a later notation that "[t]hings not thought of will be done in concert with owner and contractor." Wyler asserted that the parties had agreed to the fixed price of $70,000, while Glee claimed that the amounts due were to be calculated on a cost-plus basis, and that the cap had been inserted after the page was initialed. The parties disagree as to the court's treatment of the document as evidence of a contract, and its treatment of a pretrial stipulation concerning the existence of a written contract.

Early in the trial during the cross-examination of plaintiff Dudley, a dispute arose about whether the pretrial designation of defense exhibits was timely. The court called a recess in order to discuss the status of the exhibits. No record was made of the ensuing conference in chambers, although it apparently included a discussion of the pretrial report of the conference of counsel. In the report the parties stated that the two issues for trial were whether the work performed and the materials provided by Glee conformed to the parties' specifications and whether the work was performed in a timely fashion. The report also stipulated:

> There is no written home construction contract between the parties containing the work dates, contract price, method of payment, description of work and warranty information as set forth in 10 M.R.S.A. § [1487].

After the recess an abbreviated discussion occurred between the court and defense counsel. The court first stated that the stipulation "says there's no written contract...." After defense counsel pointed out that the stipulation provided that there was no contract as set forth in 10 M.R.S.A. § 1487, the court responded, "But it also indicates that there's no contract involving several different specifications. And without those, it seems as—I don't know what kind of contract it would be if there's—and it refers to no written contract for that, and I will

accept that as a stipulation." That ruling may mean only that the written contract fails to comply with the requirements of subsections (3), (4), (5), (6), and (7) of section 1487, rather than meaning there was no written contract at all. Because the court dealt with the issues as if some agreement were involved, we conclude that the court's trial ruling and post-trial findings concerned only the absence of a written contract complying with subsections (3) through (7) of section 1487.

■ During the trial Glee presented uncontroverted evidence of the amounts expended for labor and materials. Wyler responded with evidence of Glee's ineptitude and the costs of repairing Glee's mistakes after it left the job site. The court deducted from Glee's claim the amount that it found Wyler was entitled to set off, and entered judgment for Glee in the amount of $16,-755.50.

■ Because the trial court's ultimate result was correct, we need not speculate whether it erred in some ruling made during the unrecorded conference in chambers. *L. Ray Packing Co. v. Commercial Union Ins. Co.,* 469 A.2d 832, 834 (Me.1983). The court relied on uncontested evidence of the balance due for labor and materials, and then appropriately reduced that amount based on evidence that the work had not been done properly. *See Pond Cove Millwork Co. v. Steeves,* 598 A.2d 1181, 1182–83 (Me.1991) (amount to which builder is entitled may be subject to deductions or setoffs for expenses incurred or damages sustained by homeowner due to builder's failure to perform properly). The notation in the document submitted by Wyler, stating that the parties could agree to further modifications, in addition to the conflicting testimony, warranted the conclusion that either there was no cap on the price or that the cap had been abandoned.

■ We reject Wyler's remaining claims of error. The trial court acted within its discretion in declining to bar Glee's recovery on the ground of unclean hands. If the defense were applicable at all, there was evidence from which the court could have concluded that Wyler was aware of the violations of which he complains, namely, that unlicensed workers installed the wiring and plumbing. Accordingly, his own lack of clean hands would bar the application of that doctrine against Glee. *See Niner v. Hanson,* 217 Md. 298, 142 A.2d 798, 803 (1958) (clean hands doctrine would not bar plaintiff's recovery when defendant union not only was aware of offending conduct and failed to act, but allowed plaintiff to be elected as its president); 30A C.J.S. *Equity* § 111, at 324 (1992) (clean hands doctrine may not be employed if party seeking its application has unclean hands).

■ Wyler also asserts that Glee's failure to provide a written contract in compliance with the HCCA constitutes a violation of the UTPA, thereby entitling him to attorney fees and costs pursuant to 5 M.R.S.A. § 213(2) (1989). *See* 10 M.R.S.A. § 1490(1) (any violation of HCCA is prima facie evidence of UTPA violation). The parties agree that there was no written contract that complied with the HCCA. *See* 10 M.R.S.A. § 1487 (listing contract requirements). Wyler has not demonstrated, however, that he suffered a loss of money or property, or that his damages are restitutionary in nature, as required to recover pursuant to the UTPA. *See Kleinschmidt v. Morrow,* 642 A.2d 161, 165–66 (Me.1994); *Bartner v. Carter,* 405 A.2d 194, 203–04 (Me.1979) (consumer may recover in private UTPA action only if seeking restitutionary damages for loss of money or property); *Banville v. Huckins,* 407 A.2d 294, 298–99 (Me.1979); *Drinkwater v. Patten Realty Corp.,* 563 A.2d 772, 777 (Me.1989).[1]

The entry is:

Judgment affirmed.

All concurring.

---

1. In 1991, the Legislature amended 5 M.R.S.A. § 213(1) to provide for the recovery of actual damages in UTPA actions. P.L.1991, ch. 536, § 1. Because the complaint and counterclaim were pending at the time of its enactment, that amendment is not applicable to this case. P.L. 1991, ch. 536, § 3; 1 M.R.S.A. § 302 (1989).